JOHN BROWN, Appellant, *v.* LAWRENCE RILEY, Appellee.

### APPEAL FROM KNOX.

A party who purchases personal property of a mortgagor, for a good consideration, it remaining in his possession, at the time of the purchase, will be protected, if the transaction on the part of the purchaser, was one of good faith.

If such property is afterwards loaned to the vendor for a temporary purpose, or if the vendor is in the employment of the purchaser, the rights of the purchaser will not thereby be disturbed.

To impeach the sale of personal property, it is necessary to show that both vendor and purchaser designed to delay creditors.

Brown *v.* Riley.

A chattel mortgage designed to delay and hinder creditors, will not affect an honest purchaser of the property. Notice must be brought home to the purchaser.

THIS was an action of replevin commenced in the Knox Circuit Court to recover two horses, one double wagon, and one double harness, claimed by the plaintiff, and was tried in that court before a jury at the April term, A. D. 1858. Verdict and judgment for plaintiff. Motion for a new trial by the defendant overruled.

Declaration that defendant unlawfully took two horses, one wagon, and one harness, and unjustly detained the same.

Five pleas were filed as follows:

1st. Did not take and retain the property.

2nd. Did not unlawfully take or detain.

3rd. The property was not the property of the plaintiff, but was the property of one Patrick Gibney.

4th. That as one of the constables of Knox county, Illinois, he took the said property justly, because heretofore, to wit: on the 26th day of February, A. D. 1858, one L. C. Conger, then police magistrate in Galesburg, Knox county, Illinois, issued under his hand in due form, an execution in favor of James C. McMurtry, plaintiff, against Patrick Gibney and Thomas Stokes; that on the 27th February, 1858, the execution came to his hands to execute; that he was then acting constable in said county, and that by the execution he was commanded to make $212 $\frac{90}{100}$ which James C. McMurtry had recovered on the 26th day of February, 1858, before said magistrate, against Patrick Gibney and Thomas Stokes, and that as constable, on the 8th of March, 1858, he levied said execution upon and took the property, and detained the same as the property of Patrick Gibney, whose property it then was, which was the same and only taking and detention, and prays damages and return of the property.

5th. Did not unlawfully detain.

Issues were joined on all the pleas.

*Patrick Gibney* testified, that he made a mortgage on the property in controversy to Thomas Moony, and that on the 24th of February, A. D. 1858, he sold the said property to the plaintiff; plaintiff was to pay me twenty-five dollars and pay the debt to Moony; the plaintiff saw Moony and gave him a note for $275, and Moony gave up his claim to the property, and the same day I went and gave the plaintiff the property, and plaintiff took the property home, and plaintiff kept it after that; three or four days afterwards the plaintiff asked me to get him a load of wood with the team, and I went for the wood with the team, and then the defendant took the team and property.

I told him the property was Brown's, and he said he would take the property, and he was good for it; defendent threw off the wood.

The defendant took the property upon an execution, and I suppose he was a constable, he claimed to act as such; he claimed to levy on the property; the levy was three or four days after the sale to Brown; the note was given to Moony the same day of the sale to Brown; the sale was at Moony's place; the horses were then in Drake's stable, where I kept them for three months previous; I have never had the mortgage since I made it; the note that accompanied the mortgage was given to me.

*Thomas Moony* testified, at the date of the mortgage Gibney owed me the note shown of three hundred and sixty dollars; I sold the note and mortgage to plaintiff in February, it might have been on the 24th day; he gave me his note for $275, dated 24th February, for the note and mortgage; Gibney and Brown came to my place, and plaintiff said he was about buying the horses and other property, if he could arrange with me, and asked if I would take his note, and I said yes; the plaintiff had the property, and gave me his note, then I gave him Gibney's note endorsed by me without recourse, and delivered to him the mortgage, and he took the property away; I never had the property in my possession.

At the time I gave the mortgage to the plaintiff, I did not make any assignment of the mortgage; I delivered the note and mortgage to plaintiff the same day; the plaintiff bought the property and took plaintiff's note same day; I sold plaintiff the note and mortgage, and took his note for $275, and what I owed him; I owed him eight or ten dollars.

One *Fitzgerald* testified, that plaintiff and Gibney lived one-half mile apart; plaintiff gave Gibney $25; I heard when the constable took the team, and it was four or five days after the sale; the day of the sale the plaintiff took the horses home, and came back and hired the stable of Drake, where Gibney had formerly kept them, and put the horses in there; the stable was half a mile from plaintiff's; after the sale I saw Gibney feed the team.

*L. E. Conger* testified, that he replevied the property, when and at the place where it was advertised for sale by the defendant.

The defendant offered evidence as follows:

*Henry Frans* testified, that defendant acted as constable in Knox county, in February and March last.

Defendant offered and read in evidence an execution and endorsement thereon, issued by L. C. Conger, police magistrate,

dated 26th February, A. D. 1858, purporting to be issued for the collection of a judgment, $212.90 and costs, recovered before him 26th day of February, 1858, in favor of James C. McMurtry, plaintiff, and against Patrick Gibney and Thomas Stokes, which execution had the following endorsement thereon:

"This execution hereto attached came to my hands on the 27th day of February, A. D. 1858, at 2 o'clock, P. M., and on the 8th day of March, 1858, I levied the same execution upon one span of horses, harness and wagon, and on the undivided half of a lot of wood of about two hundred cords, and on a lot of logs; all of said horses, wagon and harness was levied upon as the property of Patrick Gibney, and the said logs and wood as the property of Thomas Stokes; and I further certify that I advertised said wood and logs on the 9th of March, according to law, and on the 20th of March, 1858, sold the wood for $80, and the logs for $1.60; and I certify that the horses, harness and wagon were replevied from me by L. E. Conger, deputy sheriff, at the suit of John Brown against me as defendant, on the 20th day of March, 1858.   ·  ·      W. L. RILEY,

*Constable in and for Knox Co., Ill."*

At the request of the plaintiff the court gave to the jury the following instructions, numbers 1, 2, 3, 4, 5, 6 and 7, and defendant excepted to the giving the same:

1. If the jury find from the evidence, that Brown bought the property in good faith on the 24th day of February, and took possession, the fact that Gibney was drawing wood for the plaintiff when the property was taken, does not effect a legal change of possession, or effect the validity of plaintiff's title, and if it was levied on and taken by defendant while thus in Gibney's use, the levy and taking was wrongful, and no demand is necessary to be proved.

2. If the jury believe, from the evidence, that the plaintiff bought the property on 24th February in good faith, and took possession of it on that day, he had a right to loan or hire the same to the defendant in the execution on the day spoken of to draw wood with, and such loan does not render or make the plaintiff's title void, or subject the property to the execution against Gibney.

3. Unless it is proved that Brown knew that there was fraud in the mortgage, or that the purchase by him was made with a view to defraud, delay or hinder creditors of Gibney, his title is not rendered invalid, even though the jury should believe that the mortgage was fraudulent, and void as such, for want of sufficient consideration.

4. If the jury believe, from the evidence, that the plaintiff was a *bona fide* purchaser of the property in controversy, and received the possession of it on the 24th day of February, and the execution upon which the defendant took said property did

not come to his hands until the 27th day of February, they are instructed to find for the plaintiff.

5. If the jury believe, from the evidence, that the mortgage from Gibney to Moony was not made in good faith, still, if they believe from the evidence, that Brown, the plaintiff, was not a party to said mortgage, and was not a party to any fraudulent sale, and had no knowledge of it, but made his purchase in good faith, and before the execution became a lien, they will find for the plaintiff.

6. The jury are instructed that they are not to infer fraud on the part of Brown, the plaintiff, because he paid a part of the purchase money to Moony, the mortgagee, by the request of Gibney, of whom Brown purchased the property, and that fraud is never to be presumed but must always be proved.

7. If the sale was actually made and possession of the property taken on the 24th of February, it is wholly immaterial that a written assignment of the mortgage was not made till afterwards.

The defendant asked the court to give the following instructions, numbers 1, 2, and 3, and the court refused to give them, and defendant excepted:

1. The jury are instructed, that if they believe, from the evidence, that the defendant came lawfully in possession of the property in controversy, then they will find for defendant, unless they further believe, from the evidence, that the plaintiff, prior to the commencement of this suit, made a demand of the property.

2. The jury are instructed, that if they believe, from the evidence, that the defendant was an acting constable in and for the county of Knox, and that as such constable the execution shown in evidence came to the hands of the defendant to execute, and that while the property in dispute was in the hands, possession or control of one or both of the defendants in said execution, this defendant levied said execution upon the property in controversy and took it away, that such taking and levy would not be wrongful, and that this action cannot be maintained by the plaintiff without proving a demand of the property before bringing the suit, or a taking that was wrongful.

3. The jury are instructed that if the defendant in good faith as constable levied on the property while the same was in Gibney's hands, by virtue of said execution shown in evidence, and took the same away, such levy and taking would not be wrongful, and that a demand must be proven before the plaintiff can recover.

At request of defendant the court gave the following instructions, numbers 4, 5, 11, 6, and 8:

Brown *v.* Riley.

4. The jury are instructed that the endorsement of the constable and the return of the defendant attached to the execution shown in evidence, is *prima facie* evidence of the time when the execution came into his hands, upon what property the same was levied and the time of the levy, and what became of the property.

5. The jury are instructed that the mortgage shown in evidence is void as against the execution shown in evidence, unless possession was taken by plaintiff before the execution came to the officer's hands.

11. The jury are instructed that the execution shown in evidence was a lien upon all the personal property of Patrick Gibney from and after the time when said execution came to the hands of the defendant, and that no sale or transfer of such property by said Gibney, after the execution came to the hands of the defendant, could destroy or affect such lien.

6. The jury are instructed that in this case a wrongful taking is not presumed but must be proven.

8. The jury are instructed that the burthen of proof as to the ownership of the property is upon the plaintiff, and that if the proof is equally balanced as to the ownership, they will find for the defendant.

Defendant asked the court to give the following instruction, number 10, and the court refused to give the same as asked, and defendant excepted :

10. The jury are instructed that a sale of personal property is not valid in any case against an execution, unless the sale is followed up by an absolute and continued change of possession, and that the possession must be delivered by the execution debtor before the execution comes into the hands of the officer to execute.

And the court modified the said instruction 10, by striking out the words " *and continued,*" and gave the same so modified, and defendant excepted.

The defendant asked the court to give instructions numbers 9, and 7 ; the court refused to give them, and defendant excepted. The court modified them and gave them modified as follows, and defendant excepted :

9. If the jury believe, from the evidence, that the property in controversy was sold by Patrick Gibney to the plaintiff, still, if the jury believe that such sale was made to delay or hinder the collection of said execution debt, then such sale was void as against said execution.

Modification to instruction 9 : " Provided the jury further believe from the evidence that the plaintiff knew of the purpose of such sale and was party to it."

Brown *v.* Riley.

7. The jury are instructed, that if the defendant was an acting constable of Knox county and that as such constable he received said execution, that from the time he received the execution it was a lien upon all the personal property of Patrick Gibney in said county, and that the defendant had the right, and it was his duty as such constable, to levy the same on any personal property then owned by said Gibney in said county, and take the same away, and such levy and taking would not make a wrongful taking.

Modification to instruction 7 : " If the sale from Gibney to plaintiff was a fair and honest transaction, and possession was delivered to plaintiff before the execution came into defendant's hands; then the property belonged to plaintiff and was not subject to execution to pay Gibney's debts."

Verdict for plaintiff. Damages one cent.

The defendant then moved the court for a new trial, for the following reasons :

1. The verdict is against the law and evidence.

2. The verdict is against the instructions of the court.

3. The instructions are calculated to mislead the jury.

4. The court erred in giving the instructions asked by the plaintiff.

5. The court erred in refusing to give the instructions asked by the defendant.

6. The court erred in modifying the instructions asked by the defendant and giving the same so modified.

7. The court erred in refusing to give the instructions asked by defendant as asked.

8. The evidence was not sufficient to authorize a recovery.

DOUGLASS & CRAIG, for Appellant.

T. G. FROST, for Appellee.

WALKER, J. The first question presented by this record is whether the sale of the property in controversy was fair and *bona fide*. The evidence tends to show that Gibney had previously executed a mortgage on the property to Moony, for the sum of three hundred and sixty dollars. And appellee purchased the property of Gibney, and he gave his note to Moony for two hundred and seventy-five dollars, and was to pay Gibney twenty-five. The property was delivered to appellee on the day of its sale, and remained in his possession from that time until the day upon which it was seized on execution. On that day, appellee employed Gibney to haul for him a load of wood with the wagon and team, and while in his possession the levy was

made. The execution bears date the 26th of February, 1858, and was placed in the hands of the officer on the day following, and the levy was made on the 8th day of March, 1858. There was some uncertainty, from the evidence, when the sale was made to appellee. Gibney testified that it was on the 24th day of February, 1858, while another witness testified that he heard when the levy was made, which was four or five days after the sale. Moony also testified that the sale was made some time in February, and might have been on the 24th day. Fitzgerald testifies that he was present at the sale of the property in February. If the sale and delivery was made before the execution came to the hands of the officer, there can be no doubt of its validity unless it was impeached for fraud. There is evidence in the case, justifying the jury in finding, that it was made before the execution became a lien. In case of such a conflict of evidence, it is for the jury to determine to which they should give the preponderance, and the court will not disturb the finding unless it is manifestly against the weight of evidence.

Whilst a sale of personal property, without a delivery and change of possession, is fraudulent as to subsequent purchasers and creditors, if the sale is made in good faith, for a sufficient consideration, and possession is taken by the purchaser, it is valid to pass the title against all creditors not having a lien upon it. And a loan of the property by the purchaser to the seller, for a temporary purpose, or the employment of the seller to use the property in the pursuit of the business of the purchaser, will not avoid the sale, and render it liable to sale on execution issued after the purchase. It may be a circumstance to be taken into consideration by the jury, that the seller is subsequently found with its possession, and it is for them to determine whether such possession is *bona fide*, or is only colorable. In this case, there was evidence to justify the jury in finding that Gibney was in the employment of appellee and using the property in his business, and that the possession of the property was in appellee.

To impeach a sale of property as fraudulent, as to purchasers and creditors, it is necessary to show that both the vendor and purchaser intended to hinder and delay creditors in the collection of their debts. It is not enough that such was the design of the seller, unless the purchaser participated in or had notice of such design at the time of the sale. *Ewing* v. *Runkle*, 20 Ill. R. 448. Whether such was the design of the parties to this transaction, was a question of fact for the determination of the jury, from all the circumstances in evidence on the trial, and they were justified by the evidence in finding as they have done.

Even if the mortgage made by Gibney to Moony was fraudulent, and made to hinder and delay Gibney's creditors, a *bona*

*fide* purchase of the property by appellee would not be affected by that fraud. To charge him with it, he should have had notice that it was executed for that purpose; and the jury could not infer from the mere fact that the mortgage had been so made, that the appellee was a party to or had notice of it. Such a notice should be established by other evidence. And if it were conceded that the mortgage was fraudulent, there was no evidence that appellee was either a party to the fraud or had any notice of it.

There is no error perceived either in the giving or refusing the various instructions asked in the cause. Nor do we see any error in the modifications which were made to others before they were given. The instructions fairly presented the law applicable to the evidence in the case, and the evidence justified the verdict.

The judgment of the Circuit Court is affirmed.

*Judgment affirmed.*