ISAAC R. CUNNINGHAM, Plaintiff in Error, *v.* WILLIAM R. HAMILTON, Defendant in Error.

ERROR TO HANCOCK.

When the mortgagor gives up possession of the mortgaged chattel to the mortgagee, on default, and the note secured by the mortgage is destroyed, the chattel becomes the absolute property of the mortgagee, who, after having had it for a reasonable time in his possession, may loan or hire it to the mortgagor, and his doing so does not furnish a legal presumption of fraud.

Cunningham *v.* Hamilton.

JESSE R. CUNNINGHAM filed his declaration in replevin, in the usual form, against William R. Hamilton, for the wrongful detention of one bay horse, the property of the plaintiff, of the value of one hundred dollars.

To this declaration the defendant plead:

1st. Non detinet; and plaintiff added similiter.

2nd. That the property was not the property of the plaintiff; and plaintiff added similiter.

3rd. That it was the property of one Milton Williford.

4th. That the defendant took the property by virtue of an execution issued on the 21st day of July, 1859, out of the Circuit Court of Hancock county, Illinois, on a valid judgment against Williford and others; and that he, as sheriff of said county, detained the property as the property of Williford, the execution having been placed in his hands on the day it was issued.

To the third and fourth pleas the plaintiff severally replied: the horse was not the property of Williford, but the property of said Cunningham, the plaintiff; and the defendant added the similiter.

Jury waived and cause tried at the May term, 1860, by consent, before SIBLEY, Judge, who found the issues for the defendant.

The plaintiff moved the court for a new trial, and his motion was overruled, and a judgment of return of property and for costs was rendered against the plaintiff, to which the plaintiff at the time excepted.

By consent of parties the bill of exceptions is ordered to be filed in vacation, and preserves all the evidence in this cause, which is as follows:

The defendant on the trial admitted a demand by the plaintiff for the property, before suit brought, and defendant's refusal to deliver it.

*Milton Williford* testified, that on the 15th day of September, 1858, the day when the chattel mortgage in evidence bears date, and was executed, he (Williford) was justly indebted to the plaintiff, in the sum of $229.07, (the amount mentioned in the mortgage,) and that he gave the plaintiff said mortgage on the property replevied in this case, and other property to secure the payment of that indebtedness. That about the time the mortgage became due, the plaintiff came to get the horse, the plaintiff and defendant both at that time living in Carthage, about eight miles from where he (witness) lived, and kept said horse; that he delivered the horse to the plaintiff and helped him to take it to Carthage; that he tore up the note which had been given for the amount mentioned in said chattel mortgage; that said horse remained in Cunningham's (the plaintiff's) possession two or three

days; that he (witness) had some hay down, and asked plaintiff for the use of the horse to haul it in; that plaintiff objected, but finally agreed that if he would feed the horse well, and put him in good order, he might use him to haul his hay, and he would pay him one dollar a week for taking care of him; the horse to be returned when called for by Cunningham; the horse was delivered up to the plaintiff in good faith and not to delay creditors.

*Huddlestone Sleater*, called by the plaintiff, testified that the horse replevied, being the same horse mentioned in the mortgage, was delivered to the plaintiff on the evening of the 14th day of September, 1859, and remained in his possession two or three days.

The plaintiff introduced in evidence the chattel mortgage mentioned in the testimony of Williford, and which was read without objection. This chattel mortgage is regularly executed and acknowledged in the form required by law, by Milton Williford, on the property in controversy, to secure the payment to the plaintiff of a promissory note for $229.07, dated the 15th day of September, A. D. 1858, and payable to the plaintiff twelve months after date. The mortgage has a provision that it shall or may be lawful for Williford, the mortgagor, to retain possession of the property until default made in the payment of the note. The mortgage was duly recorded on the 20th day of September, A. D. 1858, and will be found on the record, as also the acknowledgment and the certificate of the recorder.

The plaintiff admitted on the trial that the defendant was sheriff of Hancock county, Illinois, and that as such sheriff, he took said property as the property of Williford, on an execution issued out of the Circuit Court of said county, on the 21st day of July, 1859, on a valid judgment in favor of Enoch Ramsey, and against Milton Williford and others, which execution was levied on the horse in question, on the 17th day of September, 1859, the horse then being in the possession of Williford, as he has stated in his testimony.

The court decided that the return of the property into the hands of Williford was a legal fraud.

Errors assigned:

The court erred in not finding the issues for the plaintiff; in finding the issues for the defendant; and in overruling the plaintiff's motion for a new trial, and in rendering judgment for a return of the property, and for costs against the plaintiff.

Mack & Draper, for Plaintiff in Error.

Scofield, Ferris & Manier, for Defendant in Error.

BREESE, J.   We think the errors in this case are well assigned. There seems to us to be an entire absence of facts or circumstances tending to vitiate this transaction, and stamp it with fraud.   The chattel mortgage on the horse is of unquestioned validity, and the testimony of his delivery to the mortgagee on the evening before the maturity of the note, and the breach of the condition of the mortgage, and the destruction of the note thereupon, is undisputed.   The evidence is clear on these points. On the delivery, the horse became for every purpose, the property of the mortgagee, who could loan him, mortgage, sell him, or do as he pleased with him.   It was his property.

But it is said, the loaning him to the mortgagor, after he had been in the possession of the mortgagee two or three days, was fraudulent *per se*.   We think not.   The title to the horse was perfect in the mortgagee, and he had a right to loan or hire him to the mortgagor or to any one else.   He had been in the possession of the mortgagee long enough to apprise all parties of the change of ownership.   The whole transaction bears none of the indicia of a fraud in law or in fact.   We cannot distinguish the case from that of *Brown* v. *Riley*, 22 Ill. 45.   In principle it is the same, and must be decided in the same way.

The judgment is reversed, and the cause remanded.

*Judgment reversed.*