GEORGE W. McMAHILL
v.
MARTIN HUMES.

*Chattel Mortgages—Sale to Mortgagee—Validity of—Change of Possession—Sufficiency of—Loan—Practice—Trial without Jury—Finding of Court—How far Conclusive.*

.1.   After verbal sale and delivery of chattel property or after *bona fide* delivery of mortgaged chattels to the mortgagee in satisfaction of the debt, the vendee or mortgagee may temporarily loan the same to the vendor or mortgagor or employ the latter to use the chattels in the service of the vendee without invalidating his title.

2. Where the mortgagor merely hitches horses to the mortgagee's rack for a half hour and then borrows them, the possession of the mortgagee is not long enough to apprise all parties of the change of ownership.

3. Where a jury is waived, the finding of the court, like the verdict of the jury, is conclusive, unless it is manifestly against the weight of evidence.

[Opinion filed December 11, 1886.]

APPEAL from the Circuit Court of Warren County; the Hon. A. A. SMITH, Judge, presiding.

In connection with this case see the following case of Eagle v. Rohrheimer.

Messrs. STEWART & STEWART, for appellant.

There is no evidence whatever that McMahill intended to defraud any of Willard's creditors, and having bought and paid for the horses, McMahill had a right to loan them to Willard to finish gathering his rent corn, and by so doing he did not defraud Humes, or induce him to part with any of his property, because Humes testifies that he took his mortgage to secure a store bill, and a note he bought of Ostrander, and that he had no intention of taking the chattel mortgage when he bought the note of Ostrander. Brown v. Riley, 22 Ill. 46; Wright v. Grover, 27 Ill. 426; Neece v. Haley, 23 Ill. 416; Funk v. Staats, 24 Ill. 632, 645; Cunningham v. Hamilton, 25 Ill. 228; Reynolds v. Patterson, 4 Ill. App. 183.

The fact that McMahill loaned the horses to Willard after he had bought them is not a fraud *per se*, as was urged in the Circuit Court. Cunningham v. Hamilton, 25 Ill. 231; Reynolds v. Patterson, 4 Ill. App. 183.

Messrs. GRIER & DRYDEN, for appellee.

Reed v. Eames, 19 Ill. 594, announces a principle which has never been departed from since : that where a mortgage, like the one in the case at bar, contains a stipulation that the property shall remain with the mortgagor until default, that becomes the agreement between the parties placed upon record, thereby giving notice to all of the kind of tenure by which

the possession is held; that upon default by maturity or otherwise, the title and right of possession become absolute in the mortgagee and he is bound to take possession, and that a failure to do so upon default is a fraud, because the real ownership being in one person and the ostensible ownership in another, gives the latter a false credit.   And Justice Breese adds that while some courts hold such facts open to explanation, the safer and better rule is that it constitutes fraud *per se* and incapable of explanation; conclusive as against creditors, subsequent purchasers, etc.

· This doctrine has been affirmed and re-affirmed, notably in Thompson v. Yeck, 31 Ill. 73; Cass v. Perkins, 23 Ill. 382; Reese v. Mitchell, 41 Ill. 365; Lemen v. Robinson, 59 Ill. 115; Arnold v. Stock, 81 Ill. 407; Ticknor v. McClelland, 84 Ill. 471.

We re-affirm that there was no delivery of possession by Willard to McMahill such as to preclude Humes' rights, because to constitute such change of possession it must be open, visible, public and manifested by such outward signs as render it evident that the possession of the owner has wholly ceased. Bump, Fraudulent Con., 114.

The delivery of possession must be accompanied with such unmistakable acts of control and ownership as a prudent, *bona fide* purchaser would do in the exercise of his rights, so that all persons may have notice that he owns and has possession of the property.

The length of time such possession should continue has been clearly pointed out by the Supreme Court; it must be long enough to apprise all parties of the change of ownership. Cunningham v. Hamilton, 25 Ill. 228.


Lacey, J.   This was an action in replevin commenced before a Justice to recover the possession of the mare and horse in controversy, commenced by appellee against appellant, and judgment being rendered before the Justice for the appellant, the appellee appealed to the Circuit Court, where the case was tried by the court, a jury being waived, and the court found for him and judgment against appellee for costs, and he appeals to this court.

It appears from the evidence that one F. M. Willard was the owner of the horses, and on December 13, 1882, mortgaged them to appellant to secure a note for $250, due in one year from date. A day or two before the note and mortgage became due Willard drove the 'horses over to the farm of appellant and there was an attempted adjustment of the debt and sale of the team to appellant, and the note and mortgage was delivered up. But the team remaining in the possession of Willard, he, on the 25th of December, 1883, re-mortgaged them to appellee to secure $190. Afterward in January, 1884, appellant replevied the horses from Willard, when thereafter, and after demand, appellee replevied them from appellant, claiming under his mortgage, and *that* is this suit.

The only point in dispute is whether the attempted sale from Willard to appellant was perfected by actual delivery of the possession of the horses to appellant so as to make a perfect and complete sale to him as against subsequent purchasers and incumbrancers. This is the only controlling question here.

There are only two witnesses to the transaction—Willard and appellant. After an agreement between Willard and appellant that the horses were to be taken by appellant in discharge of the note and mortgage and they were to be delivered to appellant at his house, appellant testifies as to what took place at the time of the attempted delivery as follows: " Willard came over to my place a day or two before my note and mortgage was due and said he had brought over the team to deliver it up and get the note and mortgage. I got the note and mortgage and went out with him to where the team was tied to my hitching rack and I took hold of the halters and looked into their mouths, asked Willard how old they were and asked him about a place on the mare where the skin was broken. I then gave Willard the note and mortgage as he said he would not give up the horses unless I gave up all the papers; so I gave them to him. I asked him what he was doing; he said he was gathering the rent corn, due for land which I had rented to him and he wanted to borrow the team to finish it, so I loaned him the team to gather the said rent

corn and told him where to put it. He said it would take three or four days to finish gathering the corn and he took the team and went back. He was at my place about half an hour. He refused to return the team and I had to replevy them."

Willard testified on the subject of delivery: "When I went to settle the mortgage up I took the team over to McMahill's; hitched them up to the hitching rack and went to his house and told him I brought the horses over to settle up this mortgage. I wanted the use of the team a year and McMahill said he did not know about that. He gave me the note and mortgage and asked me some questions about them, as to their age and how the mare got some skin rubbed off her. He also asked what I was doing; told him I was gathering the rent corn. He told me to go back and finish gathering it and I went back and went to work." This was all the evidence on the subject of the delivery of the horses by Willard to McMahill. The appellant relies for reversal on the authority of Brown v. Riley, 22 Ill. 46.; Wright v. Grover, 27 Ill. 430; Neece v. Haley, 23 Ill. 417; Funk v. Staats, 24 Ill. 645; Cunningham v. Hamilton, 25 Ill. 231; Reynolds v. Patterson, 4 Ill. App. 183.

There can be no question that, after verbal sale and delivery of chattel property, or after *bona fide* delivery of mortgaged chattels to the mortgagee in satisfaction of the debt, the vendee or mortgagee may temporarily loan the same to the vendor or mortgagor, or employ the latter to use the chattels in the service of the vendee without invalidating the title. But in this case it is a question whether the actual possession required by law was ever taken by appellant before the horses were re-mortgaged to appellee, and the key note on which the decision of this case rests is found in Cunningham v. Hamilton, 25 Ill. 228, where the court says "the possession of the mortgagee must be long enough to apprise all parties of the change of ownership." That can not be said to have been done in this case. Because the horses were hitched at appellant's rack for half an hour it can not, with reason, be claimed that actual possession was taken by him in the manner the law requires.

There were abundant grounds in the evidence to justify the court in finding that the delivery of possession " was not long enough to apprise all parties of the change of ownership."

In fact there was no delivery of possession at all either symbolical or otherwise. The evidence also, we think, fully justified the court in finding that appellee was an innocent purchaser without negligence. But when it is considered that the finding of a court, like the verdict of a jury, must be conclusive, unless we can see that such finding is manifestly against the weight of the evidence, it will be seen that there can be but slight grounds upon which a reversal could be based.

We therefore find there is no error in the record, and order that the judgment be affirmed.

*Judgment affirmed.*