# Montgomery Ward & Company v. American Trust & Savings Bank.

1. POSSESSION—*Secured by Agreement Does Not Operate to Perfect a Defective Title.*—A and B having receipts of an alleged warehouseman for the same property, A sued out a writ of replevin upon which a paper levy was made, actual possession of the goods not being secured. An agreement was then made that the property should be removed to another county and delivered to A, and that B should institute a replevin suit in which the controversy should be determined. *Held,* that A acquired no superior right or claim by what took place under this arrangement, that his possession secured under it did not tend to perfect his title under his receipt, and that the rights of the parties must be determined with reference to the facts as they stood before the agreement was made.

2. WAREHOUSE RECEIPTS—*For Goods Not In Esse.*—A warehouse receipt is of no validity as to goods not *in esse* at the time it is given.

3. SAME—*Holder of Senior Receipt Entitled to Preference.*—As between two persons holding warehouse receipts for the same goods the one holding the receipt of prior date is entitled to the goods.

4. SAME—*Issued by Persons Not Public Warehousemen.*—The possession of a warehouse receipt for merchandise, although issued by one not a public warehouseman under the statute, is by custom, at least as to articles difficult of delivery, equivalent to the possession of the property itself. The issuance of such a receipt amounts to a symbolical delivery of the goods described in it and possession of it is equivalent to the possession of the goods described so far as they are *in esse* when the receipt is given.

5. SALES—*Vendor Must have Title.*—It is a general rule of law, sanctioned by common sense, that no man can by his sale transfer to another the right of ownership of a thing wherein he himself has no right of property.

Replevin.—Appeal from the Circuit Court of Cook County; the Hon. ABNER SMITH, Judge, presiding. Heard in this court at the March term, 1897. Reversed and remanded. Opinion filed August 5, 1897.

MERRICK, EVANS & WHITNEY, attorneys for appellant.

The change in possession of the goods in question on or before June 25th and August 12th, respectively, from the Foundry & Machine Company to the Light & Power Company, together with the delivery to appellant of the warehouse receipts of June 25th and August 12th, respectively,

was good against all subsequent purchasers and creditors of the Foundry & Machine Company.    Benjamin on Sales, *p. 302; Rohde v. Thwaites, 6 B. & C., 388; Burton v. Curyea, 40 Ill. 320; Leonard v. Dunton, 51 Ill. 482; Broadwell v. Howard, 77 Ill. 305; Wilson v. Pearson, 20 Ill. 81; Statute of Frauds, Sec. 5.

After appellant had procured the change of possession of the goods in question from the Foundry & Machine Company to the Light & Power Company, both being separate and distinct corporations, duly organized under the laws of the State of Illinois, its title to such property could not be affected by any subsequent connivance or collusion between said corporations unless the same is brought to the knowledge of appellant.    Statute of Frauds, Sec. 5; Ewing v. Runkle, 20 Ill. 449; Reynolds v. Patterson, 4 Ill. App. 183; Seaton v. Ruff, 29 Ill. App. 235;   Brown v. Riley, 22 Ill. 45; Bowden v. Bowden, 75 Ill. 143; Wright v. Grover, 27 Ill. 426; Powers v. Green, 14 Ill. 386; Read v. Wilson, 22 Ill. 377.

The warehouse receipt of July 17th to appellee is void. Burton v. Curyea, 40 Ill. 320; Montague v. Ficklin, 18 Ill. App. 99; Tiedeman on Sales, Sec. 318; Lickbarrow v. Mason, 1 Smith Leading Cases, Pt. 2, 1197; *Nemo dat quod non habet*, Broom's Maxims, 455.

This case is governed by the rules of law relating to warehouse receipts and the passing of title to property thereby. Rev. Stat., Chap. 114, on Warehouses, Secs. 2 and 24; Broadwell v. Howard, 77 Ill. 305; Smith's Lead. Cases, Vol. 1, Part 2d (7 Am. Ed.), 1197; Western Union R. R. Co. v. Wagner, 65 Ill. 197; Northrop v. First Nat. Bank, 27 Ill. App. 527, 529.

Moran, Kraus & Mayer, attorneys for appellee.

Mr. Justice Windes delivered the opinion of the Court.

This was an action of replevin brought by appellant, the contest in which was as to the right to the possession of and title to certain agricultural implements claimed by each

of the parties hereto, under different warehouse receipts to them respectively issued.

On April 11, 1896, the Sycamore Foundry & Machine Company, a corporation doing business at Sycamore, DeKalb County, Illinois, obtained from plaintiff an order for the manufacture of various agricultural implements. The goods were to be properly stenciled with the name of Montgomery Ward & Company, and to be ready and paid for September 1, 1896. It was evidently in the contemplation of the parties to such order, that at least a portion of the goods might be ready for shipment and shipped prior to September 1st.

Early in June, 1896, the Sycamore Foundry & Machine Company requested appellant to take the portion of the goods then manufactured, and pay cash therefor, and in consideration of a discount, appellant agreed to take and pay cash for the goods then manufactured, provided the Foundry & Machine Company would, at its expense, place the same in the possession of a third party, and have such third party issue a warehouse receipt therefor, and would procure insurance on the goods for the benefit of appellant.

On June 25, 1896, the Sycamore Foundry & Machine Company delivered to appellant a warehouse receipt from the Sycamore Light & Power Company, also a corporation doing business at Sycamore, and at the same time the Foundry & Machine Company delivered to plaintiff two policies of insurance, covering the goods in question, loss payable to the Foundry & Machine Company and appellant, as their interests might appear.

Appellant about that date paid for the goods mentioned in the said warehouse receipt, the price agreed upon in the order for their manufacture, less a discount allowed to it by reason of its advance payment.

About the 12th of August, 1896, the balance of the goods mentioned in the original order were completed, and in pursuance of the agreement to take them upon completion, appellant paid for the remainder of the goods on August 13th and 14th, and received for them from the Sycamore

Foundry & Machine Company a warehouse receipt made by the Sycamore Light & Power Company, and also a policy of insurance, loss payable, like the previous one, to appellant and the Sycamore Foundry & Machine Company, as their interests might appear.

On May 14, 1896, Harvey S. Hayden, then the president of the Foundry & Machine Company, applied to appellee for a loan of $2,500 to meet the pay-roll of the Foundry & Machine Company due the next day. Thereupon appellee loaned $2,500 on the note of Hayden Brothers. The proceeds of this loan were immediately turned over to the Foundry & Machine Company. This note of Hayden Brothers matured June 1st, and was then renewed for thirty days; at the maturity of that note, it was renewed until July 20th.

Frank C. Patten was at this time the vice-president of the Foundry & Machine Company, and also one of the directors of the Light & Power Company. He and Hayden arranged that Hayden should endeavor to obtain from appellee $1,500 as an additional loan, and also an extension of the $2,500 note of Hayden Brothers until September 1st, and that to do so the order for goods to be manufactured, given by appellant April 11, 1896, together with a warehouse receipt for the goods covered by that order, should be given to appellee as security. Thereupon Hayden took the order made by appellant, April 11th, and procured from appellee an additional loan of $1,500, and an extension of the loan of $2,500 to September 1st, on the note of Hayden Brothers, that being the date when the goods covered by the order of appellant were to be paid for. This additional loan and the extension were made by appellee on condition that the order of April 11th, made by appellant, and a warehouse receipt for the goods covered by that order, and fire insurance policies covering these goods, should be delivered to appellee as security for said loan, and on July 17, 1896, this was done, the Light & Power Company issuing the warehouse receipt. A few days prior to August 29, 1896, an execution for a small amount, against the Sycamore

Foundry & Machine Company, was placed in the hands of the sheriff of DeKalb county, and the sheriff made a paper levy on the goods in controversy in this suit, but did not take actual possession of said goods. On August 29, 1896, the Sycamore Foundry & Machine Company made, in the County Court of DeKalb County, a voluntary assignment for the benefit of its creditors. On September 2, 1896, appellee sued out a writ of replevin against the sheriff, describing in the writ the goods in controversy in this suit, covered by its warehouse receipt, given to it as aforesaid.

On September 2, 1896, it placed said writ of replevin in the hands of the coroner of DeKalb County, who also made a paper levy, and served it by reading, but did not take actual possession of the goods.

A few days thereafter the attorney for appellant called upon the president of appellee, and after some negotiations, stipulated with the attorneys for appellee that steps should be taken to remove any liens existing in favor of the execution creditors at Sycamore, or in favor of the assignee, if any, and for an arrangement for having the goods sent to Chicago, so that the right of property as between the parties might be tried in Chicago. This resulted in the writing, by the attorneys for appellee to their correspondents at Sycamore, who had immediate charge of the replevin suit there brought on behalf of appellee, of the following letter:

"CHICAGO, Oct. 7, 1896.
Messrs. Jones & Rogers, Sycamore, Ill.

DEAR SIRS: As we are virtually in possession of the property in controversy between the American Trust & Savings Bank and Montgomery Ward & Company, and as it is desired by us as well as by Mr. Merrick, attorney for Montgomery Ward & Company, that whatever litigation, if any, there may be between us, as to the right of property, shall be conducted in Cook county, we have come to this understanding: The property replevied by us shall be turned over to Mr. Jennison on behalf of the American Trust & Savings Bank, you to obtain an order from the

County Court · permitting the assignee to turn it over, the replevin writ to be returned "No property found." The goods are to be shipped here at once to the American Trust & Savings Bank by Mr. Jennison, so that if Montgomery Ward & Company desire to replevy the same from us, they may be able to do so here without delay, that the case may be tried here.

By kindly carrying out these instructions strictly you will oblige,

Yours very truly,

MORAN, KRAUS & MAYER.

P. S.   We understand that the execution and attachment creditors make no claim to the goods.   We also prefer to litigate with Montgomery Ward & Company here.

M., K. & M."

The attorney for appellant and an agent of appellee then went to Sycamore, obtained an order from the County Court releasing any claim of the assignee, made an arrangement with reference to the shipping of the goods to Chicago, which upon their arrival here were deliverd to appellee; whereupon appellant demanded from appellee the goods, which demand being in writing was refused; appellant brought a replevin suit in Cook County for said goods.

The question of fact involved in this case is: Did the Sycamore Foundry and Machine Company, the manufacturer of the goods upon the order of appellant, part with the possession of the goods under any arrangement by it made with appellant? Appellant claims that the goods in question were by the Sycamore Foundry & Machine Company delivered to the Sycamore Light & Power Company as a warehouseman, and that such last named company, as such warehouseman, issued its warehouse receipts for such goods, and that such receipts were given to appellant upon its paying for such goods; and that thereby such goods were, by the Light & Power Company, held in trust for appellant, to be surrendered to it upon the production of such warehouse receipts.

Appellee claims that the Sycamore Foundry & Machine

Company never parted with such goods; that while the Sycamore Foundry & Machine Company and the Sycamore Light & Power Company were technically distinct corporations, yet in reality they were one and the same, the Light & Power Company being a mere creature and dependent of the Foundry & Machine Company, and that appellee not having notice of any of the rights claimed by appellant, obtained the warehouse receipt given to it, appellee, July 17, 1896, upon a loan to the Sycamore Foundry & Machine Company of the sum of $4,000, and that thereafter the actual custody and possession of said goods never having been taken from said Sycamore Foundry & Machine Company, or, if taken, being in the custody of the sheriff of DeKalb county, under the execution against the Foundry & Machine Company to said sheriff delivered, it, appellee, sued out its writ of replevin for said goods, and placed the same in the hands of the coroner of DeKalb county. Appellee claims that thus it became virtually in possession of said goods, and that appellant, recognizing this, and both parties desiring that the litigation as to the right to the possession of said goods should be conducted in Cook county, an arrangement between appellant and appellee was made by which said goods were brought to this county and delivered to appellee; and the question as to their respective rights was to be settled by a replevin suit in Cook county, pursuant to which arrangement this suit was begun.

The Circuit Court of this county, in which this action was brought, a jury having been waived, found that appellee was entitled to the custody of such goods, which finding may be justified only under the conclusion, if such there was of the court, that while none of the warehouse receipts were good as against *bona fide* creditors or purchasers of the Foundry & Machine Company, that appellee, under its right as against the Foundry & Machine Company to the possession of such goods, obtained actual possession of the same, and thereby, made its claim, which theretofore was good only as against the Foundry & Machine Company, good as against all the world, to the extent of its lien to secure the payment of the loan of $4,000 by it made.

It can not be disputed but that appellant had, as against the Foundry & Machine Company, by its advance payment for the goods, become entitled to the possession thereof. The contest in this case is not as to the rights of the Foundry & Machine Company as against appellant, but as to the rights of one of its creditors, who obtained a right of possession of said goods as against the Foundry & Machine Company, as against appellant; which right, it has been found by the Circuit Court, appellee perfected as against all the world by obtaining the actual possession of such goods, by agreement with appellant, however, and for the very purpose, in this suit, of settling the conflicting rights of appellant and appellee.

That contention can not be maintained. The rights of appellant and appellee, all claims of the assignee of the Foundry & Machine Company, and of the sheriff under the execution against the Foundry & Machine Company having been released, must be determined on the basis on which they stood October 7, 1896, when the letter of appellee's counsel of that date was written, in which it is stated the goods in question were then in controversy between appellee and appellant, and pursuant to which and arrangements with appellant's counsel, the goods were shipped to Chicago. Appellee and appellant under this arrangement joined in a petition to the County Court of DeKalb county, in which it is stated they both claimed the property; the County Court so ordered and directed the assignee not to interfere with the possession of the property; the replevin writ in favor of appellee was returned " no property found," and thereafter representatives of appellee and appellant acting together had the goods shipped to Chicago, appellant's counsel agreeing to pay the freight.

It needs no citation of authority to show that appellee acquired no superior right or claim by what took place under these amicable arrangements. Prior to these arrangements, neither appellee nor appellant had the actual, or any possession of the goods, unless the possession of the Light & Power Company was such possession—that is, unless

the issuance of the warehouse receipts, coupled with the transactions of the parties, was a symbolical delivery of the goods, or the actual possession passed from the Foundry & Machine Company to the Light & Power Company, by virtue of the transactions between the several parties and what took place with reference to the goods themselves, thus making the Light & Power Company the bailee for appellee or appellant.

The evidence in the record shows that the goods described in the warehouse receipt of June 25, 1896, had been completed and were in the warehouse, the title of which was in the Light & Power Company prior to that date, and were on that date or before paid for by appellant.

On July 17, 1896, what goods had been completed and placed in this warehouse, besides the goods described in the receipt of June 25, 1896, is not clear from the evidence, but there is evidence tending to prove that some of the goods described in appellee's receipt, not covered by the receipt of June 25, 1896, were completed and in the warehouse at the time appellee's receipt was given. The evidence is also clear that when appellant received its receipt of August 12, 1896, all the goods described in it had theretofore been completed and placed in the warehouse. Appellee's receipt covers all the goods contained in both appellant's receipts.

Art. 13, Sec. 1 of the Constitution, declares, "All elevators or storehouses where grain or other property is stored for a compensation, whether the property stored be kept separate or not, are declared to be public warehouses."

Ch. 114, Sec. 1, divides public warehouses as defined by the Constitution, into three classes, A, B and C, and it is conceded that if the warehouse of the Light & Power Company is a public warehouse, it comes under Class C, which is stated by the statute (Sec. 2), "shall embrace all other warehouses or places where property of any kind is stored for a consideration."

Both the Constitution and the statute clearly contemplate that no place of storage shall be considered a public ware-

house, unless it be conducted by one in the business of receiving goods for storage for a consideration.

It is conceded that under its charter the Light & Power Company was not authorized to do a storage business, and that it in fact did not engage in that business as a business, nor is it shown that it at any time received goods for storage for a consideration, unless that may be inferred from the receipt of appellee, which contains the words "upon the surrender of this certificate and payment of charges."

We are therefore of opinion that the warehouse of the Light & Power Company was not a public warehouse within the meaning of the laws of this State, and that the receipts of both appellant and appellee are of no more validity or binding force, so far as giving title to the holder thereof is concerned, than the receipt of any private individual. But if these receipts are warehouse receipts within the meaning of the statute, then the receipt of appellee is of no validity, to the extent of the goods not *in esse* at the time it was given, and as to the goods contained in it, and also in the prior receipt of June 25, 1896, held by appellant, would not be good as against appellant. Union Trust Co. v. Trumbull, 137 Ill. 146-173.

Appellant holds two receipts, which on their face state the goods are "held subject to the order of Montgomery Ward & Co. only." Appellee's receipt shows the receipt of goods from the Foundry & Machine Company deliverable to its order, and indorsed in blank by the Foundry & Machine Company. A part of the goods described in the receipt were not in existence when the receipt was given, and as to these it must be a nullity.

As appellee got no possession of the goods, nor any right to their possession superior to appellant by virtue of its loan of money, it has no claim, at least to the goods for which appellant paid, on June 25, 1896, nor as to those not in existence July 17, 1896.

In Fawcett v. Osborn, 32 Ill. 424, the Supreme Court said (and it is quoted with approval in the Burton case, *infra*): " We apprehend no well considered case can be found

in the books, where a party has been deprived of his property without his consent, or where a party selling has been adjudged competent to convey to a purchaser a better title than he himself possessed.

The general rule of law, sanctioned by common sense, is, that no man can, by his sale, transfer to another the right of ownership in a thing wherein he himself had not the right of property," except in certain cases specified, not here applicable.

When appellant paid the money June 25, 1896, and the receipt of that date was given, it was the intention of both parties that the right of property should pass to appellant, and that without reference to whether the receipt was a valid warehouse receipt or not, and if the Light & Power Company did not become the bailee of appellant, the Foundry & Machine Company did, and it had no title which it could convey to appellee, under the circumstances shown in this case. Burton v. Curyea, 40 Ill. 332, and cases cited; Fawcett v. Osborn, 32 Ill. 424, and cases cited.

If the principle announced in the Fawcett case is law, it is immaterial in this case whether the Light & Power Company was the agent of the Foundry & Machine Company or not; the latter, by its dealings with appellant, rendered itself powerless to convey a good title to appellee—unless appellant had notice of a fraudulent intent of the Foundry & Machine Company, and that is nowhere contended or shown. The question in that connection is, which of two innocent persons, neither of whom got possession of the property, should suffer. Appellant had no notice but that the Light & Power Company was a wholly separate and distinct entity from the Foundry & Machine Company, which in law it was, however the fact may be, and is in no way to blame for the fraud, if there be fraud, of the Foundry & Machine Company in pledging the goods to appellee. We think that the Light & Power Company should be held, for the purposes of this case, the bailee of appellant, not the agent of appellee, and that the possession of the goods in question was held by the Light & Power Company for appellant,

at least so far as concerns those described in the receipt of June 25, 1896, and those in the receipt of August 12, 1896, which were not *in esse* on July 17, 1896.  Rev. Stats., Ch. 59, Secs. 4 and 5; Ewing v. Runkle, 20 Ill. 449–460; Brown v. Riley, 22 Ill. 45–51; Reynolds v. Patterson 4 Ill. App. 184; Seaton v. Ruff, 29 Id. 235.

But if this view should not be tenable, we think that while the receipts are not warehouse receipts, within the meaning of the statute, still they are an acknowledgment by the person giving them that he has received merchandise, and from whom and on whose account and usage, at least as to articles difficult of delivery, has made the possession of such documents equivalent to the possession of the property itself.  They amount to a symbolical delivery of the goods described in them.  The possession of these receipts was equivalent to the possession of the goods described in them, so far as the goods were *in esse* when the receipts were given.  Lickbarrow v. Mason, 1 Smith's L. Cases, pt. 2, 1197; Western Union R. R. Co. v. Wagner, 65 Ill. 197; Spangler v. Butterfield, 6 Col. 356, and cases cited; Northop v. First Nat. Bk., 27 Ill. App. 529; Durr v. Hervey, 44 Ark. 306; Puckett v. Reed, 31 Ark. 131, and cases cited; Glasgow v. Nicholson, 25 Mo. 30; Waller v. Parker, 5 Cald. 476; Planters, etc., Co. v. Merchants, etc., Bank, 3 S. E. Rep. 328; Baltimore & Ohio R. R. Co v. Wilkens, 44 Md. 11–27; Benjamin on Sales, Bk. 1, part 2, Secs. 172, *et seq.*

Inasmuch as the evidence fails to show that all the goods included in appellee's receipt of July 17, 1896, were in existence at that time, the cause is reversed and remanded for a new trial.