RAWLS *vs.* SAULSBURY, RESPESS & COMPANY.

[This case was argued at the last term, and the decision reserved. JACKSON, Chief Justice, having been of counsel, did not preside. Judge Stewart, of the Flint circuit, was designated to preside in his place.]

1. Where parties contract for the sale of cotton then stored in a warehouse, within the knowledge of both, agree upon a price, the vendor delivers the warehouse receipts to the purchaser and takes a check for the purchase price, delivery may be inferred without any positive agreement.

2. Where parties contracted for the sale of cotton, the vendor received a check on bank for the full purchase price, delivered up the check, had the amount placed in a pass-book by the officers of the bank, and took possession of the pass-book as his own, the sale became complete, and the relation of debtor and creditor existed between the vendor and the bank.

3. The verdict was supported by the evidence.

Sales. Trover. Title. Vendor and purchaser. Debtor and creditor. Banks. New Trial. Before Judge SPEER. Bibb Superior Court. October Term, 1879.

Reported in the decision.

R. F. LYON; W. D. STONE, for plaintiff in error.

E. F. BEST, for defendants.

STEWART, Judge.

The plaintiff brought his action of trover against defendants for the recovery of forty-three bales of cotton.

On the trial, the facts presented were, in substance, as follows: That plaintiff was a farmer, and had forty-three bales of cotton in Forsyth, mostly in the warehouse of Mr. G. A Cabaniss. That on the 27th day of April, 1875, he sold the cotton to B. Pye & Son, of Forsyth, at 15 cents per pound—amounting to $3,079.70. When trade was being made, he procured Mr. G. A. Cabaniss to make a calculation; delivered to Cabaniss the warehouse receipts, and took the calculation to B. Pye & Son, who gave a check for the amount on their bank; plaintiff handed check to the teller or cashier of the bank, and by request, the amount was entered on a pass-book, check was retained by the bank, and the pass-book furnished the plaintiff, who carried the same away with him. That B. Pye & Son, who owned the bank, were merchants and cotton buyers, and were the same persons who purchased the cotton; that the cotton has not been paid for. B. Pye & Son had money in bank the day of the trade, but failed in a few days. Soon after the purchase of the cotton by B. Pye & Son, they sold the same to defendants, and it was shipped to Macon.

The case was tried, and, under the charge of the court, the jury found a verdict for defendants. Plaintiff made a motion for a new trial on the grounds in said motion stated.

The motion was heard and new trial refused, and plaintiff now seeks to have the judgment of the court, refusing new trial, reversed. The grounds in the motion for new trial were chiefly: That the verdict was contrary to law, contrary to evidence, and against equity and justice, and that the verdict was against the charge of the court, as follows: "By §1593 of the Code of Georgia, cotton, corn, rice, and other products sold by planters and commission merchants on cash sale, shall not be considered as the property of the buyer, or the ownership given up until the same shall be fully paid for, although it may have been delivered into the possession of the buyer. In the

v 66—25

selling, therefore, of cotton by a planter or commission merchant, *on cash sale*, this section of the Code renders the sale executory, that is, not binding or complete, so as to pass the title to the buyer, and out of the seller—until the seller has been fully paid, and though the cotton may have been delivered to the buyer under said contract of sale, until the seller has been paid fully, no title passes to the buyer, and consequently no title would pass, even to one who buys *bona fide* from the buyer as against the original owner, even though he may have bought without notice that the cotton was not paid for."

"If you, therefore, believe that the plaintiff in this case was a planter, and the owner of the cotton in controversy, and that he did sell, on cash sale, the same to B. Pye & Son, at a price agreed upon, and though said cotton may have been delivered to B. Pye & Son ; yet if the plaintiff has not been fully paid for said cotton, no title, under the law, would pass under said contract of sale, either to B. Pye & Son, or to the defendants, if they claim under B. Pye & Son ; but on the contrary, if the defendants, under such circumstances, became possessed of the cotton, they would be liable to respond to plaintiff for the value of said cotton, with interest thereon from the time the same was demanded of them, up to the time of this trial. The statute declaring that a planter or commission merchant who makes sale for *cash*, of cotton or other produce, and that the title shall not pass until he is fully paid, means payment in money. It means that he shall be fully paid (unless the parties otherwise agree) in money, before the title passes. In the absence of any special agreement— the only payment known to the law is *cash ;* a payment in a check would not be payment in law, unless the check itself was paid. Though the planter and buyer may make a sale of cotton or other produce on a cash basis as to its terms, and for cash only, yet whatever the parties in closing the contract and making settlement shall treat finally as the equivalent or representative of cash, will serve as a

substitute in lieu of the money, if they really intend in receiving said equivalent or substitute for money to conclude the sale presently, and pass the title at once."

"That the material questions in this case for you to consider are, first, was the sale of the cotton for cash: if so, then no payment in law would be sufficient to satisfy or discharge said contract of sale but the money, unless the parties expressly stipulated to take something else as an equivalent or substitute for the money. If you find that the contract of sale was not discharged in money, was it by an agreement of the parties discharged in some other manner, by plaintiff receiving something as an equivalent or substitute for the money? The mere reception of a check for the amount would not be a discharge, neither would the reception of the check and credit therefor in the banking house of B. Pye & Son, be conclusive evidence of a discharge of such contract of sale; it would be presumptive or *prima facie* evidence of such discharge; but to rebut such presumption of discharge, either party would be entitled to show that it was not the intention of the parties to discharge said contract of sale, or pass the title until the money was paid; and if they do not show this, then it would not be discharged, and the title to the cotton did not pass to the buyer."

Counsel for plaintiff in error concede that the decision in the case of *Flanders & Huguenin vs. Maynard*, in 58 *Ga.*, 56, controls this court, unless this court should reverse said decision. And request is now made that this court consider and reverse the decision in the case of *Flanders & Huguenin vs. Maynard.* That case was elaborately argued and decided after mature deliberation; therefore we do not feel justified in changing or reversing the same, but the same is affirmed.

1. When parties contract for the sale of cotton then stored in a warehouse within the knowledge of both, a price is agreed upon, warehouse receipts delivered up to the purchaser, and a check given to the seller on a bank for

the money, delivery, under such circumstances, may be inferred without any positive agreement, as the seller at his option could draw the money, and the buyer, having the receipt, could demand actual possession of the cotton.

2. If parties contract for the sale of cotton, the seller receiving a check on a bank for the full purchase price, and delivers up the check and has the amount placed in a pass-book by the officers of the bank, and takes possession of the pass-book as his, the contract of sale is complete, and the relation of debtor and creditor exists between the seller and the bank—the seller becoming a depositor and the bank his debtor for the amount charged in the pass-book. See 17 *Wallace*, 109; *Morse on Banking*, 26 and 27.

3. The verdict in this case is supported by the evidence.

Judgment affirmed.