SHEPARD & COMPANY *v.* KING, receiver.

Where a manufacturer contracted to manufacture goods for another and store them in the former's warehouse to be shipped as instructed, the purchaser to pay for the goods as fast as they were made and stored, by honoring the manufacturer's drafts when presented with warehouse receipts attached to the same, and where the latter issued a warehouse receipt reciting that a specified quantity of the goods had been so made and stored, the facts however being that although the goods had been actually manufactured they needed some slight work to put them in merchantable condition as required by the contract and had not been removed from the factory to the warehouse, and the purchaser paid a draft for the price of these goods, to which this receipt was attached, under these facts the title to the goods passed to the purchaser as against the claim of a receiver who was appointed at the instance of creditors to take charge of the manufacturer's assets and who

v 96-6

had accordingly seized the goods in question before their actual shipment to the purchaser.

April 1, 1895. By two Justices. Brought forward from the last term.

Equitable petition. Before Judge HENRY. Floyd superior court. September term, 1893.

C. N. FEATHERSTON, for plaintiffs.

FOUCHÉ & FOUCHÉ, for defendant.

SIMMONS, Chief Justice.

On January 28th, 1890, the Rome Rolling-Mill Co. entered into a contract with Shepard & Co., in the form of a writing, signed by the rolling-mill company, which reads as follows:

"Rome, Ga., 28th January, 1890.

"We have this day sold to Messrs. Shepard & Co. of Boston, Mass., 50,000 bundles of cotton ties, to be 11 feet long, to have No. 2 or No. 4 arrow buckles (new), bundles to consist of 30 hoops and 30 buckles, well bundled and coated, and to weigh not less than an average of 50 pounds to the bundle. Messrs. Shepard & Co. to pay us cash for the ties as fast as we make and store them for them in our warehouse. We to draw on them at sight, with our warehouse receipt attached to draft. The rate of delivery and price to be as follows: 5,555 bundles per month from January, 1890, to September, inclusive. The January quota to be delivered in February and March. Price to be, for January, February and March, $1.05 per bundle for 1,000 bundles, $1.10 per bundle for balance. For April, May and June, $1.07½ per bundle for 10,000 bundles, and $1.12½ for balance. For July, August and September, $1.10 per bundle for 10,000 bundles, and $1.15 per bundle for balance. All prices f. o. b. cars here. We to store the ties in our warehouse, to keep them insured and to load them into cars for shipment at any time this season as Messrs. Shepard & Co. shall instruct us, and to make no charge for same."

For several months and until placed in the hands of a receiver, the rolling-mill company furnished ties in pursuance of this contract, the ties, as soon as finished, be-

ing removed to the company's warehouse, about two hundred yards from the mill, and a warehouse receipt being issued at the end of each week for the week's supply, and attached to a draft for the value of the ties covered by the receipt. Usually the receipt and draft would include a few ties which were in an unfinished state and had not been removed from the mill to the warehouse. On Saturday, May 31st, 1890, a draft was drawn by the rolling-mill company, at the direction of Shepard & Co., for the value of 1,700 bundles of ties, and attached to the draft was a warehouse receipt of the same date, issued by the rolling-mill company for that number of ties. On the same day, the draft and receipt were deposited, as was the custom, with the Merchants National Bank of Rome, and the amount of the draft placed by the bank to the credit of the rolling-mill company. The draft was paid by the drawee when presented for payment. On Monday, June 2, 1890, King, as receiver in the case of Cothran *et al. v.* The Rome Rolling-Mill Company *et al.*, took possession of the mill and other property of the rolling-mill company, and found stored in the mill 643 bundles of ties. These ties were a part of the 1,700 bundles included in the warehouse receipt and draft of the preceding Saturday, above referred to, and had not been removed because some of them were without buckles, and others had not yet been tarred, or the tar was so fresh that they could not be bundled. This was explained to the receiver by the officers of the rolling-mill company, but the receiver took possession of the ties and converted them into money. Shepard & Co. thereupon filed a petition claiming title to the ties, and praying that they might be made parties to the case, to the end that under proper issues joined between them and the receiver, their title might be established, and the proceeds in the hands of the receiver be refunded to them; and for such other re-

lief as might properly be granted them. By agreement the cause was submitted for trial upon the law and the facts, to the presiding judge without a jury. At the trial the facts above stated appeared in evidence. The court adjudged that no title had passed to the petitioners, and denied the relief prayed for, and to this ruling they excepted.

We think the court erred in so holding. The essentials of a sale are an identification of the thing sold, an agreement as to the price to be paid, and consent of the parties. (Code, §2629.) Generally the delivery of goods is essential to the perfection of a sale, but the intention of the parties to the contract may dispense therewith. Delivery need not be actual, but may be constructive. (*Id.* §2644.) In determining whether a sale of the ties in question had been effected, so as to pass title to Shepard & Co., the main thing to be considered is the intention of the parties. The issuing or transferring of a warehouse receipt is a common and well recognized mode of effecting delivery, and in this case was undoubtedly intended to operate as a delivery. Having received the price of the goods, the rolling-mill company would be estopped from denying the fact of delivery. To allow the company to deny this fact would be to permit it to take advantage of its own wrong; and it could not be heard to say that the delivery was incomplete because the goods were not entirely finished or had not been removed from the mill to the warehouse. Nor do we think the creditors of the vendor stood upon a different footing in this respect from the vendor itself. It was not contended, nor is there any evidence indicating, that there was bad faith or an intent to defraud creditors on the part of the rolling-mill company and Shepard & Co. It is certain that if Shepard & Co. paid a draft for the value of the ties, knowing that they were partially unfinished and not in fact in the warehouse, the delivery

would be complete, for it would then be the manifest intention of both parties that one should tender and the other accept a delivery of the ties in an unfinished condition; and it can make no substantial difference that Shepard & Co. paid the draft in ignorance of the fact that the recitals were in fact incorrect, if they made no complaint when the truth was ascertained, and thus ratified the failure of the rolling-mill company to fully comply with its contract. See on this subject, 1 Corbin's Benj. Sales, pp. 366, 392; Tiedeman on Sales, §106; 21 Am. & Eng. Enc. of Law, pp. 505–507.

*Judgment reversed.*