### 450.  LIVINGSTON *v.* ANDERSON & SON.

1. Delivery of a warehouse receipt is constructive delivery of the articles which it represents; but constructive delivery will not suffice if actual delivery at the time of the sale is impossible.
2. The delivery of a warehouse receipt implies a guaranty on the part of the seller that the articles represented by the receipt are in existence and in the custody of the bailee therein specified; and for a breach of this implied warranty the purchaser, on failure of actual delivery, may recover the purchase-price paid by him, or proceed against the warehouseman, at his option. The right of action against the warehouseman is not exclusive of the purchaser's remedy against the vendor, should the purchaser elect to rescind the contract of purchase for the reason that delivery was impossible at the time of his purchase.

Complaint, from city court of Eastman—Judge Gale presiding. March 21, 1907.

Submitted June 25,—Decided July 4, 1907.

*DeLacy & Bishop, W. M. Morrison,* for plaintiff in error.
*D. M. Roberts & Son, Tye, Peeples, Bryan & Jordan,* contra.

RUSSELL, J.  Livingston brought suit against U. Anderson & Son, alleging that between the 24th and 31st days of December, 1903, he bought from them a bale of cotton, represented by a warehouse receipt as follows:

"Eastman, Ga., Nov. 7th, 1906. Harrell's Fire-proof Warehouse. W. F. Harrell, Proprietor. Received of T. L. Kirkley, Marks, 1; No. 477; Weights, 611. One bale cotton. Marks, numbers, etc., as per margin, subject to the presentation of this receipt or order on paying expenses and all advances. Acts of providence and fire excepted. W. F. Harrell, for the proprietor."

Petitioner further alleged payment to the defendant of $76.38 for said cotton, and that thereupon the warehouse receipt representing the cotton was delivered to him; that petitioner presented the receipt and the warehouseman failed to deliver the cotton; and that thereupon petitioner took the receipt back to defendants and tendered it to them and demanded of them the return of the purchase-money paid for the cotton; which the defendants refused. The petition further alleged, that the bale of cotton in question was not in the warehouse at the time of his demand, but had in fact been shipped out of the warehouse some time before defendants sold the same to plaintiff, of which fact plaintiff had no knowledge or notice until after his purchase from defendants, and until after said receipt was presented to the warehouseman and delivery of the cotton demanded thereunder. The petitioner further averred, that by reason of this purchase and the payment of the agreed price it was the duty of the defendants, and the law implied a contract, to deliver to petitioner the bale of cotton represented by said warehouse receipt, and that it would be delivered to him by said warehouseman on presentation of the receipt. The petitioner alleged, that he had fully complied with the terms of the contract of purchase for the bale of cotton, by paying defendants the entire purchase-price, relying upon their undertaking and contract to deliver the bale of cotton to petitioner; and that defendants received and accepted from petitioner the full purchase-price, to-wit

$76.38. ·The failure and refusal of the warehouseman to deliver the cotton, and the failure and refusal of U. Anderson & Son to deliver it to petitioner in pursuance of the sale and of defendants' contract and agreement to deliver to him, is alleged as a breach of contract by the defendants, and judgment is asked " (*a*) for the recovery of said bale of cotton and the hire thereof, or its value; or (*b*) for the damages resulting to petitioner from the breach of contract; or (*c*) for the recovery of the purchase-money of said cotton paid to U. Anderson & Son, and interest thereon from November 7, 1903, treating the contract for the sale of said cotton to petitioner as rescinded by reason of the facts hereinbefore set forth, and petitioner, before the commencement of this suit, having tendered and now hereby continuously tendering back to said U. Anderson & Son said warehouse receipt delivered by them to petitioner."

The defendants admitted, in their answer, the sale of the cotton to the plaintiff, and the delivery of the warehouse receipt as above set out; that the bale of cotton was not delivered by the warehouseman, and that the plaintiff tendered back the ·warehouse receipt and demanded back the purchase-price, and that they refused to pay the plaintiff the value of the bale of cotton or to deliver the cotton to him, or to return to him the amount of the purchase-money paid therefor. ··The defendants set up, as their defense, that they purchased the bale of cotton in the usual course of business; that they bought by sample and sold the same way, obtaining the warehouse receipt from the party to whom it was issued, and delivered the receipt to the plaintiff; that the plaintiff knew the warehouse in which the cotton was stored, as shown by the receipt, and knew that the defendants did not have the cotton at their place of business; that the defendants acted in good faith, believing that a warehouse receipt meant something, and that when a warehouseman issued a receipt, agreeing to hold the cotton represented by it until the cotton was delivered back to him, this agreement would be kept and the bale of cotton would remain in the warehouse until the cotton was surrendered. Defendants insisted that plaintiff's cause of action was against the warehouseman, and that plaintiff's petition drew them into useless litigation, and they asked for damages against the plaintiff.

The case was submitted to the judge, without the intervention

ot a jury, upon the following agreed statement of facts: "It is agreed by and between the parties and their attorneys in the above stated case that the facts are as follows: Plaintiff bought from defendants, during the latter part of December, 1903, the bale of cotton described in the warehouse receipt set forth in plaintiff's petition, the same being the original warehouse receipt given for said cotton, and paid defendants the agreed price of $76.38 therefor, and defendants delivered to plaintiff or his agent said warehouse receipt. As a matter of physical fact the cotton was not in the warehouse at the time of said sale, but had some time previously been shipped away by M. H. Edwards & Brother, who claimed it under a duplicate receipt issued on the same day as said original receipt but after the issue of said original receipt; but Livingston did not know of the claim of Edwards & Brother, or of said shipment, until after he bought from defendants and until plaintiff presented the receipt he got from defendants to the warehouseman and demanded the cotton; but both plaintiff and defendants supposed the cotton was in the warehouse at the time of the sale by defendants to plaintiff. When plaintiff presented the receipt to the warehouseman and demanded the cotton and learned that it was not there, but had been shipped away before the purchase from defendants, he took the receipt back to the defendants and demanded of them either the bale of cotton or the return of the purchase-money he had paid to them for it; and defendants refused either to deliver the cotton or return the purchase-money, and still refuse to do so; and plaintiff has never in fact received the cotton or the return of the money he paid for it. Defendants claim that his claim or right of action, if any, should be against the warehouseman. Defendants paid T. L. Kirkley $62.63 for said bale of cotton by their check on the Citizens Banking Co., November 7, 1903, and then received from Kirkley said original warehouse receipt, which they delivered to the plaintiff at the time of selling said bale of cotton to plaintiff, and said check was paid by said bank." The trial judge rendered judgment for costs in favor of the defendants; and the plaintiff asks for a review of that judgment, by direct bill of exceptions.

The question in the case is, whether the plaintiff's right of action against the warehouseman is his only remedy, or whether he has not also the right of recovery against the defendants for the

amount paid to them for the bale of cotton represented by the warehouse receipt which he tendered back to them with a demand for his money. It is undisputed that at the time the warehouse receipt was delivered to him there was no cotton in the warehouse subject to delivery by virtue of that receipt. It is likewise undisputed that that fact was not known to either of the parties. It is unquestioned that the plaintiff made his tender of the receipt within thirty days from the time that he became aware that the bale of cotton would not and could not be delivered by the warehouseman. The plaintiff can maintain an action against the warehouseman, and he could have brought such an action. Defendants contend that this was his only remedy; and this seems to have been the view of the trial judge. In our opinion the plaintiff not only had the right to bring an action against the warehouseman, but he might, at his option, have treated the contract as rescinded; and having tendered back the receipt within a reasonable time, he was, under the agreed statement of facts, entitled to recover the $76.38 paid by him, with interest from the time of demand for repayment.

The cases cited by the learned counsel for the defendant in error establish only a proposition as to which there can be no dispute,— that this plaintiff could have brought an action of trover against the warehouseman, or could sue and recover the value of the bale of cotton from the warehouseman. To this effect is the ruling in *Nall* v. *Farmers Warehouse Co.*, 95 *Ga.* 770, 22 S. E. 665, *Zorn* v. *Hannah*, 99 *Ga.* 634, 25 S. E. 829, *Citizens Bkg. Co.* v. *Peacock*, 103 *Ga.* 171, 29 S. E. 752, and *Peacock* v. *Citizens Bkg. Co.*, 110 *Ga.* 284, 34 S. E. 851, so far as affects this case. In *Central L. Co.* v. *Exchange Bank*, 101 *Ga.* 353, 28 S. E. 866, it is said: "Cotton packed into bales is certainly personalty. The transfer or surrender of warehouse receipts, or other symbols representing cotton, may very properly be regarded as equivalent to an actual physical delivery of the cotton itself, and therefore will operate as a constructive delivery passing title." But in that case the cotton in question was at the warehouse, was levied upon by an officer; and the only question involved, as stated by the Supreme Court, on page 351, was, "In whom was the *legal* title to this cotton at the time of the levy?" That question was to be answered by determining whether one Roosevelt was or was not the agent of the claim-

ant, and the court decided that he was not such agent. That was the only issue passed upon by the court. In *Farmers Bank* v. *Bennett,* 120 *Ga.* 1012, 48 S. E. 398, the defendant came into possession of warehouse receipts without the consent or knowledge of the plaintiff, presented them at the warehouse, and received two bales of cotton and disposed of them without any authority from the plaintiff; and it was held that the bank, as pledgee, might either bring an action of trover against the defendant, or waive the tort and sue in assumpsit for the market value of the cotton. In the case of *Rawls* v. *Saulsbury,* 66 *Ga.* 397, nothing more is held, so far as applicable to this case, than that the plaintiff could have brought an action against the warehouseman; and the same thing may be inferred from *Gunn* v. *Knoop,* 73 *Ga.* 510. All of these cases, as well as *Shepard* v. *King,* 96 *Ga.* 84, 23 S. E. 113, recognize that the transferring of a warehouse receipt is a mode of effecting delivery, and that it is further true that a sale may be completed without *actual* delivery of the goods sold.

In all of the cases we have been able to examine, the personal property was in the hands of the bailee at the time of the transfer of the symbol representing such property. In this case it is admitted that, unknown to either party, the bale of cotton described in the warehouse receipt delivered by the defendants to the plaintiff was not, at the time of such transfer, in the custody of the bailee,—the warehouseman. The warehouseman could not deliver the cotton. He might not be able to respond to a judgment for the value thereof, and in either event the plaintiff had received nothing for his money except a demand and right of action against the warehouseman. This makes a case, as to its facts, unlike any which has been expressly ruled in this State. If the Supreme Court has ever held (while holding that the pledgee or transferee of a warehouse receipt can proceed against the warehouseman) that the holder of such receipt, where the cotton or other goods can not be reached, is confined solely to an action against the warehouseman, we have been unable to find it. And in the absence of a distinct ruling to that effect we think that the plaintiff has his option to proceed, if he chooses, against either the warehouseman or the defendants in this case; because there was no cotton which could be delivered by the warehouseman; and upon his discovery of that fact he promptly treated the contract as rescinded, offered to re-

store the receipt, and made timely demand for the purchase-price. When Livingston brought this action on the case, he elected to take, and asked for, a judgment against Anderson & Son for the purchase-money he paid them for the cotton, with interest thereon. At the time of the purchase there was no such cotton; and to deny Livingston the right of recovery would be to permit Anderson & Son to sell him a bale of cotton which they did not have, but which they were supposed to have, and get his money for it, and thereafter neither deliver the cotton nor return the purchase-money, and thus get Livingston's money for absolutely nothing.

It is clearly held in *Biggers* v. *Pace, 5 Ga.* 172, that notwithstanding title may have passed from seller to buyer, yet if the seller refuses to deliver the goods, the buyer may either bring trover to recover the goods, or a special action on the case for damages. Where one party to a contract is ready and willing to perform and the other is not, the first may maintain an action against the other. So that, granting that the title would have passed, if the defendants had had the cotton in the warehouse, by the delivery of the warehouse receipt, under the doctrine in the *Biggers* case we think this plaintiff can recover. As we have stated above, the effect of the rulings of our Supreme Court is simply that the delivery of warehouse receipts is such constructive delivery of the articles therein described as will pass title; and a provision to the same effect in favor of pledgees is contained in the Civil Code, §2956. But as a person selling personal property is bound to deliver the thing sold to the purchaser, and as the law makes it his duty to do so whether he in express terms agrees to deliver the articles sold or not, the very fact of selling the thing raises an implied contract of delivery. A constructive delivery by delivering a bill of sale or a warehouse receipt for the articles sold will not relieve the seller from making actual delivery of the thing which such bill of sale or warehouse receipt represents, where the uncontradicted evidence shows that such article was not in the possession of the bailee at the time of the sale. The constructive delivery relies upon the presumption that the property is, as it purports to be, in the possession of the warehouseman or the bailee. If, as a matter of fact, the property of which the warehouse receipt was a symbol has already passed from the possession of the bailee, there is no constructive delivery. The seller must then rely

upon actual delivery, or the purchaser may treat the contract as rescinded, and recover damages for the breach of the contract. The law declares the delivery of a warehouse receipt for cotton to be a constructive delivery of the cotton represented thereby, for the sole purpose of passing the title, so that an action in trover against the warehouseman issuing the receipt can be predicated thereon by the holder, just as if there had been an actual delivery of the cotton itself, in the event of a conversion by the warehouseman or his refusal to deliver the cotton to the holder; and in such case the warehouseman will not be heard to deny the title of the holder of his own receipt, whereby he obligated himself to deliver the cotton upon the presentation and surrender of the receipt. But this does not relieve the seller from making an actual delivery of the cotton when demanded by the purchaser; and a refusal to make such actual delivery subjects the seller, in case the receipt really represented nothing tangible at the time of the sale, to an action by the purchaser for the recovery of the cotton or the purchase-price paid therefor. The sale of the cotton, and the delivery of the warehouse receipt therefor to a purchaser, is equivalent to a warranty on the part of the seller that the cotton is in the warehouse. This must be conceded to be true, or, at best, the purchaser would be only buying a lawsuit; and but few are anxious for that class of property. If the property represented by the receipt is not in fact in the warehouse (as the purchaser has a right to expect it to be), there has been, on the part of the vendor, a breach of the implied warranty arising from the fact of sale and delivery of the receipt. In making such a sale the vendor not only says that he has title, but he in effect says to the purchaser, "I own a bale of cotton, and it is in the warehouse, with the marks and numbers and the weight shown in the warehouse receipt which I now deliver to you, and all you have to do is to take this receipt to the warehouse and get the cotton. I guarantee that you will now find it there and get it on presentation of this receipt." If in fact the seller had no such bale of cotton in the warehouse at the time, but it had previously been carried away to parts unknown, it seems to us that if it is out of the power of the vendor to deliver the thing sold, he should at least be liable to the purchaser for the return of the purchase-money paid him.

In this case the defendants prevented the completeness of the

plaintiff's title, by selling him a bale of cotton that they did not actually have and could not deliver in pursuance of the sale, and upon the representation, necessarily implied from the circumstances of the transaction, that the cotton was in the warehouse, when in fact it had been several weeks previously taken out of the warehouse and shipped away by an adverse claimant. The defendants can not dispute the plaintiff's title; for it came through them; and the defendants can not defend by questioning the sufficiency of the plaintiff's title, because the act of the defendants themselves prevented the completeness of their title. See *Holton* v. *Carter,* 90 *Ga.* 299, 15 S. E. 819.

According to the evidence there was a mutual mistake of fact on the part of both parties in this case. When Anderson & Son undertook to sell the bale of cotton to Livingston and he paid them for it, Anderson & Son, as well as Livingston, erroneously believed that the cotton was in the warehouse. As a matter of fact it was not there at that time, but, some time before the transaction, had been shipped away to parts unknown. As soon as this fact became known to Livingston he undertook to rescind the contract of purchase, and treated it as rescinded, and took the warehouse receipt back to Anderson & Son and tendered it, demanding that the purchase-price be refunded, and they refused to accept the receipt or refund the purchase-money. A contract predicated upon a mutual mistake of fact may be rescinded. It is undisputed that in this case both parties were laboring under the belief that the cotton was in the warehouse, and based their contract upon that belief, when as a matter of fact it was not there. Livingston, having tendered back the warehouse receipt to Anderson & Son when the mistake was discovered, rescinded the contract. And Livingston having done all that a court of equity could have required him to do, and the exercise of affirmative chancery powers or extraordinary equitable relief not being asked, it was not necessary for the plaintiff to go into a court of equity, but, the contract of purchase being treated as rescinded, the plaintiff could sue for the recovery of the purchase-money paid. The action was properly brought, and, under the admitted facts, the court erred in not rendering a judgment for the plaintiff for the amount of the purchase-price, with interest thereon.

*Judgment reversed.*