### 940.   BANK OF SPARTA *v.* BUTTS *et al.*

1. The pledgee of warehouse receipts, receiving the same as collateral upon a bona fide loan or discount of commercial paper, stands in the same privileged position as a bona fide purchaser for value of the property represented by the receipts.

2. The bona fide pledgee for value of a warehouse receipt is vested with an indefeasible title to the property of which the receipt is symbolic. This title can not be affected or incumbered by any act of the pledgor or warehouseman, and is subject to defeasance only by the payment of the debt secured by the receipt.

3. To charge an innocent pledgee of a warehouse receipt for an advance made by the warehouseman to the owner of the property represented by the receipt, the fact and amount of the advance should specifically appear in the receipt. A general statement in the receipt that it is subject to "customary charges and all advances" covers only charges necessary to the protection of the property, such as storage and insurance; such a statement is not sufficient notice of advances made on the property.

4. A warehouseman who issues negotiable instruments symbolic of property in his possession can not be permitted to destroy the commercial value of such instruments by secret and undisclosed advances.

5. The pledgee of warehouse receipts is under no legal obligation to notify the warehouseman of the transfer to him of such receipts as collateral security.

6. An action of trover against the warehouseman, to recover the property represented by the receipt, is an appropriate remedy, where he fails or refuses, on demand, to deliver the property to the holder of the receipt.

Trover, from city court of Sparta—Judge Little.   December 14, 1907.

Submitted February 17,—Decided May 7, 1908.

*R. L. Merritt,* for plaintiff.   *W. H. Burwell,* for defendant.

HILL, C. J.   This was an action of trover brought by the Bank of Sparta against D. L. Butts, on the following state of facts: Butts was engaged in the warehouse business, and also in the com-

mission or supply business. In the year 1904, as warehouseman, he received from W. W. Devereaux eleven bales of cotton, which he stored in his warehouse, and for which he executed and delivered to Devereaux warehouse receipts. Devereaux owed the Bank of Sparta certain amounts on promissory notes, and he delivered to it, as collateral security for the payment of the notes, the warehouse receipts for five bales of the cotton stored in Butts' warehouse. Devereaux failing to pay the notes, the bank notified Butts, the warehouseman, that it held the warehouse receipts for five bales of cotton, and offered to pay the customary charges, and directed that the cotton represented by the receipts be shipped to Garrett & Russell, at Augusta, Georgia. Butts, the warehouseman, in answer to the demand thus made upon him, admitted the possession of the cotton, but refused to comply with the request or demand of the bank, and inclosed a statement of Devereaux's indebtedness to him as warehouseman, for advances which he had made to Devereaux on the cotton, but offered to turn over the five bales to the bank if the latter would pay to him five elevenths of the advances which he had made on the eleven bales of cotton stored with him as warehouseman. The bank refused to pay Butts for any advances made to Devereaux, insisting that the cotton described in and covered by the warehouse receipts was only chargeable for storage and insurance. After suit was filed and before the answer of Butts was made, Butts sold six bales of the cotton which Dexereaux had stored with him, and, by consent of Devereaux, applied the proceeds thereof to his (Devereaux's) indebtedness for supplies. The claim of Butts for advances was thus reduced to the amount of $56.78; and he claimed that he had a lien on the five bales for which the bank held warehouse receipts, and refused to deliver the cotton, until payment of this amount. The bank refused to pay anything but storage and insurance on the five bales for which it held receipts.

The case was tried by the judge without the intervention of a jury, and he rendered a judgment against Butts for the full amount of the suit, less $34.28 principal, which the court allowed as a credit to Butts for advances which he had made on the cotton prior to December 20, 1905 (this being the date of demand by the Bank of Sparta for the cotton), and interest to that date on the said sum of $34.28 principal, amounting to $2.74. The writ of

error challenges the correctness of this judgment, in allowing the credit above noted, of $37.02. On the trial the Bank of Sparta moved to strike that part of the defendant's plea which set up the advances made to Devereaux by Butts on the cotton covered by the warehouse receipts. This motion was overruled, and the plaintiff excepted. It excepted also to the admission of the testimony of Butts, proving these advances, which testimony was admitted over its objection.

There are no disputed questions of fact in the case, the question being one of law arising from the facts as above substantially stated. This one question of law seems to be covered by sections of the Civil Code. Section 2956 provides, that "promissory notes and evidences of debt, warehouse receipts, elevator receipts, bills of lading, or other commercial paper symbolic of property, may be delivered in pledge." Section 2957 declares that a pledgee is such a bona fide holder of the property represented by the symbol as will protect him under the same circumstances as a bona fide purchaser. Section 2960 provides that while the general property in the goods or pledge remains in the pledgor, the pledgee has a special property for the purpose of the bailment. These sections of our code have been applied by the Supreme Court to warehouse receipts, in the case of *Citizens Banking Co.* v. *Peacock,* 103 *Ga.* 171 (29 S. E. 752) ; and this decision, in our opinion, eliminates any question of doubt as to the rights of a bona fide holder of warehouse receipts, if, indeed, there was any doubt under these sections. Under this decision of the Supreme Court, supported by authorities therein cited, it is now well established that when warehouse receipts for cotton or other goods are delivered in pledge, as collateral security for the payment of a debt, the legal effect of such delivery is to put the title to the property pledged and described in such receipt in the pledgee. The Supreme Court quotes with approval the statement of Mr. Colebrooke, in his work on Collateral Securities, §§ 413, 414, that "the transfer for value, as collateral security, of warehouse receipts, by indorsement and delivery, or by delivery only, where such receipts are made payable to 'holder,' or 'only upon the return of this receipt,' vests the legal title and possession of the property in the pledgee, and is equivalent to an actual delivery of the property;" and that "the pledgee of warehouse receipts, receiving the same, with or without indorse-

ment, as collateral upon a bona fide loan or discount of commercial paper, stands in the same privileged position as a bona fide purchaser for value;" and that "the pledgee of warehouse receipts is under no obligation to notify the warehouseman of the transfer to him of such receipts as collateral security." The title to property represented by warehouse receipts becomes vested in the bona fide pledgee for value, and this title can not be defeated or incumbered by any act of the warehouseman, nor by any act of the pledgor. The pledgee has not only a lien on the property represented by the receipt, for his advances, but he has an absolute title to the property, which is indefeasible except by payment of the debt.

It is contended in this case that the statement in the warehouse receipt, that the cotton which it represents is only deliverable to the holder of the receipt on payment of "customary charges and all advances," is sufficient to put any one who takes it on notice that any advance made on the cotton will have to be paid before the cotton can be demanded. These general words are printed in the receipt with a blank space left for the statement of the amount of the advances; and in the present case no amount is inserted in the receipts. We think that where warehouse receipts containing these words are pledged as collateral security, they do not convey notice to the pledgee that any advances have in fact been made, or that the pledgee would be required to pay any advances which may have been made or will be made on the cotton represented by the receipts. If, when the pledgee took the receipt as collateral, it contained a definite statement that, in addition to the customary charges, such as storage and insurance, a certain sum stated had been advanced to the pledgor, on the cotton, the pledgee would take it subject to that advance. It was the duty of the warehouseman, when he issued the receipt, if he had made an advance to the owner of the cotton at that time, to so state in the body of the receipt; and if he subsequently advanced to the owner any money for supplies, on the cotton in his possession as warehouseman, he should have required the production of the receipt and have entered thereon a statement of such advance. Any other rule would render warehouse receipts worthless as collateral security. It would enable the pledgor and the warehouseman to perpetrate a fraud on the pledgee, against which he would have no

protection. A mere inquiry made by the pledgee, of the pledgor, at the time of the pledge, as to the fact of advances would furnish no protection to the pledgee; and to require that the pledgee should go to the warehouseman and inquire as to the fact of advances would be wholly unreasonable. The receipt itself should bear upon its face the definite expression of the fact of advances. If advances have been made, it should so state specifically; and if not so stated, the pledgee is protected. Of course, after the pledgee obtains possession of the receipts, the title to the property thereby represented is in him, and can not be incumbered by any act, as before stated, of the warehouseman or the pledgor.

The foregoing decision, we think, is in entire harmony with adjudicated cases and with the law merchant. We therefore conclude that the trial court erred in allowing a credit to the warehouseman for any advances which he had made, other than the customary charges for storage and insurance, prior to the date of the notice of the bank to him that it held the warehouse receipts. It was not necessary for the bank to have given him any notice; for when he issued the receipts he did so with the knowledge that they were negotiable, and that the title to the property represented by these symbols passed with their transfer. The judgment in favor of the plaintiff is correct, except that, as finally diminished by credits allowed by the court, it is not large enough. The judgment is therefore reversed, so that it may be corrected and remodeled by the court in accordance with this opinion.     *Judgment reversed.*