Trial, 38 Cyc. p. 1555, n. 8; p. 1556, n. 9.

## CONTINENTAL TRUST COMPANY *v.* BANK OF HARRISON; *et vice versa.*

The questions of the Court of Appeals are answered in the affirmative.

                    No. 5208. September 23, 1926.

The Court of Appeals (in Cases Nos. 16141, 16181) certified to the Supreme Court, for instruction, the following questions:

1. The Bank of Harrison, on June 26, 1920, bought from the Continental Trust. Company, for cash, a promissory note for the principal sum of $5,000. The note was executed on June 26, 1920, by "The Cotton Warehouse Company," and was payable

Collateral Security, 11 C. J. p. 961, n. 35, 41, 42; p. 962, n. 45.

Warehousemen, 40 Cyc. p. 407, n. 81; p. 409, n. 87; p. 414, n. 30; p. 420, n. 71; p. 422, n. 97; p. 425, n. 15 New; p. 426, n. 22; p. 427, n. 32; p. 428, n. 51, 52.

sixty days after date to itself or order, and by it was indorsed in blank. Attached to the note as collateral security was a promissory note executed by "The Ellis Cotton Company," payable to itself or order, and by it indorsed in blank. Attached to the Ellis Cotton Company note, as collateral security to it, was a warehouse receipt of "The Cotton Warehouse Company," which receipt represented that thirty-two bales of cotton marked "L. A. C." had been deposited in the warehouse of "The Cotton Warehouse Company," and that this cotton was in the actual possession of said warehouse company at the time, to wit, June 26, 1920, when the Bank of Harrison bought the aforesaid note from the Continental Trust Company. Under these facts, was there an implied warranty by the Continental Trust Company that the thirty-two bales of cotton, described and symbolized by the warehouse receipt, were in existence and in the warehouse of "The Cotton Warehouse Company" on June 26, 1920?

2. If an affirmative answer is given to the foregoing question, then an answer to the following question is requested: Under the facts stated in the previous question, where the Bank of Harrison brings suit against the Continental Trust Company for damages for a breach of an implied warranty, and alleges that the Trust Company warranted that the thirty-two bales of cotton were in existence and in the custody of the warehouseman on June 26, 1920, and that the trust company "breached such warranty, . . for that none of such cotton was in existence nor in the custody of said warehouseman" on June 26, 1920, and where the evidence fails to affirmatively show that such cotton was not in existence, or that it was not in the custody of the warehouseman; but where the evidence does show that even if the cotton had been in the custody of the warehouseman, it could not have been delivered to the holder of the warehouse receipt for the cotton, because the receipt did not bear the tag numbers, which were the only means of identifying the cotton, is the plaintiff under its pleadings entitled to recover?

*Anderson, Rountree & Crenshaw* and *Bryan & Middlebrooks,* for plaintiff in error in main bill of exceptions.

*J. K. Jordan* and *E. W. Jordan,* contra.

HINES, J. Originally, warehouse receipts were not by our statute authorized to be pledged as collateral; but by the act of

October 3, 1887, such receipts were expressly made a subject of pledge. Acts 1887, p. 36; Civil Code (1910), § 3528; *Citizens Banking Co.* v. *Peacock,* 103 *Ga.* 171, 178 (29 S. E. 752). A warehouse receipt is a mere symbol of property. It is a shadow of the absent substance. When it passes from one hand to another, it is only symbolic of the property is represents. If it represents no property, its holder has nothing but a scrap of paper. *Planters Rice Mill Co.* v. *Merchants Nat. Bank,* 78 *Ga.* 574 (3 S. E. 327). A transfer of the symbol does not operate to transfer more than it represents. *Raleigh &c. R. Co.* v. *Lowe,* 101 *Ga.* 320, 329 (28 S. E. 867). The general property in the goods remains in the pawner, but the pawnee has a special property in the thing pledged, for the purposes of the bailment. Civil Code (1910), § 3532. A pledge is not a sale of the goods pledged. So, a pledge of a cotton warehouse receipt is not a sale by the pledgor to the pledgee of the cotton represented by it. So, when the pawnee transfers his debt and delivers to the transferee the property given to secure the debt, or the symbol thereof, the transaction is not a sale of the pledge as between the pawner and the transferee, but simply places the transferee in the same position which the original creditor occupied. *Bank of Forsyth* v. *Davis,* 113 *Ga.* 341 (38 S. E. 836, 84 Am. St. R. 248). However, the transfer of a warehouse receipt by the original pledgee puts the title to the property in the transferee. The transfer of the warehouse receipt puts the title to the property pledged in the transferee for the purposes of the bailment. The transferee of the original pledgee becomes the purchaser and owner, qualifiedly, of the warehouse receipt; and the title to the property pledged passes qualifiedly from the original pledgee to his transferee. *National Bank* v. *Everett,* 136 *Ga.* 372 (71 S. E. 660). "A pledgee, who takes a warehouse receipt as security for a contemporaneous loan is usually regarded as a purchaser for value." 40 Cyc. 422 (11). Again: "The pledgee of a warehouse receipt is regarded as a purchaser of the receipt to the extent of the obligation it is pledged to secure, and his rights and liabilities are therefore governed by the same rules as those of other purchasers." 40 Cyc. 428 (c).

In *Citizens Banking Co.* v. *Peacock,* supra, this court quoted with approval from Colebrook on Collateral Securities this proposition: "The pledgee of warehouse receipts, receiving the same, with

or without indorsement, as collateral upon a bona fide loan or discount of commercial paper, stands in the same privileged position as a bona fide purchaser for value of like receipts." In *Bank of Sparta* v. *Butts,* 4 *Ga. App.* 308 (61 S. E. 298), the Court of Appeals held that "The pledgee of warehouse receipts, receiving the same as collateral upon a bona fide loan or discount of commercial paper, stands in the same privileged position as a bona fide purchaser for value of the property represented by the receipts."

But our statute expressly treats the transferee as a purchaser. Our Civil Code, § 3533, declares that "The pawnee may transfer his debt and with it the possession of the thing pawned, and the purchaser stands precisely in his situation." Here the transferee of a pledge is distinctly declared to be a purchaser of the thing pledged. When the thing pledged is represented by a symbol, such as a bill of lading, or a cotton warehouse receipt, the transfer of the symbol amounts to a sale sub modo of the goods represented by the symbol. Now, if the goods so represented by the warehouse receipt have no existence, what is the right of the transferee, or purchaser? The seller in all cases of sales of goods (unless expressly or from the nature of the transaction excepted) warrants that he has a valid title and a right to sell. Civil Code (1910), § 4135. Thus in all cases, sellers of goods, or the symbols of goods (for the latter are but shadows of the absent goods, and represents them), impliedly warrant that they have a valid title and a right to sell them. What does the language, "a valid title and a right to sell," mean? Has a seller a valid merchantable title to goods which have no existence? Has he a right to sell a special interest in chattels which do not exist? Generally delivery of goods is essential to the perfection of a sale. Delivery may be dispensed with, if such is the intention of the parties. It is true that delivery need not be actual, but may be constructive. Civil Code (1910), § 4125. "Delivery of a warehouse receipt is constructive delivery of the articles which it represents; but constructive delivery will not suffice if actual delivery at the time of the sale is impossible." *Livingston* v. *Anderson,* 2 *Ga. App.* 274 (58 S. E. 505). The transferee of a warehouse receipt for cotton is entitled to demand the delivery of the cotton upon presentation of the warehouse receipt. *Lightsey* v. *Lee,* 8 *Ga. App.* 762 (70

S. E. 179). "As there can be no sale without a thing transferred to the purchaser in consideration of the price received, it follows that, if at the time of the contract the thing has ceased to exist, the sale is void." 1 Benjamin on Sales, 94, § 76. If this cotton was not in the warehouse at the time of the transfer of the cotton receipt by the trust company to the bank, there was no subject-matter upon which the bargain could operate, 'and the seller would be liable in damages. 1 Williston on Sales (2d ed.), 431, 432, § 224. Every pledgor impliedly warrants his title. Jones on Coll. Sec. (3d ed.) § 333. It necessarily follows that he impliedly warrants that the thing sold is in existence, and is deliverable. This question has never been before this court for decision, but has been decided by the Court of Appeals. That court held that "The delivery of a warehouse receipt implies a guaranty on the part of the seller that the articles represented by the receipt are in existence and in the custody of the bailee therein specified; and for a breach of this implied warranty the purchaser, on failure of actual delivery, may recover the purchase-price paid by him, or proceed against the warehouseman, at his option." *Livingston* v. *Anderson,* supra. 2 Williston on Sales (2d ed.), 1046, § 422, note 6. We think this decision sound.

Treating the trust company as a transferor of this warehouse receipt and not as the seller thereof or of the cotton represented thereby, the conclusion reached is the same. The transaction between the trust company and the bank can not be treated merely as a sale or transfer by the former to the latter of the note of the Cotton Warehouse Company. This would be taking too narrow a view of the transaction. It is true the trust company made to the bank an absolute sale of the note of the warehouse company. This sale was effected by a mere transfer by delivery of this instrument. Attached to this note as collateral security was a note of the Ellis Cotton Company, and attached to that note as collateral security was a warehouse receipt of the warehouse company which represented that 32 bales of cotton had been deposited by the maker of this note with the warehouse company, and that this cotton was in the actual possession of the warehouse company at the time of this transaction. The trust company, at the time it sold and transferred to the bank the note of the warehouse company, transferred to the bank by delivery the note of the Ellis

Cotton Company and the cotton receipt. In the Ellis note and in the cotton receipt the trust company had a special property and the title to both these instruments for the purposes of the bailment by which they were put up as collateral security for the note of the warehouse company. As between the warehouse company and the bank this transfer did not amount to a sale of the Ellis note and the cotton receipt of the warehouse company. As between the original pledgor and the bank the cotton still remained a pledge; but as between the trust company and the bank it was a transfer for value of the special property which the trust company had in this property. The trust company was a transferor of this cotton warehouse receipt, which by our statute was a negotiable instrument. The bank succeeded to the special property of the trust company in this receipt. The trust company got from the bank $5000 for the note of the warehouse company thus secured by the Ellis note and this cotton receipt. Under these circumstances did the trust company impliedly warrant that the cotton was in the warehouse and that the pledge was a subsisting, valid pledge? "Every transferor of a negotiable instrument, whether by indorsement or delivery, warrants (unless otherwise agreed by the parties) that he is the lawful holder and has a right to sell, that the instrument is genuine, and that he has no knowledge of any fact which proves the instrument to be worthless, either by insolvency of the maker, payment, or otherwise." Civil Code (1910), § 4277. It will be noted that this section treats the transferor of a negotiable instrument as the seller. It makes the transferor warrant that he "has a right to sell." It treats such a transaction as a sale; but we are dealing with it as if it were not a sale. What does the language, "has a right to sell," mean? Does it mean that the transferor of a note and a warehouse receipt held by him as collateral security for such note can sell such note without indorsement and transfer such receipt by mere delivery, get the money of the transferee, and not be liable to the latter in the event the maker of the note is insolvent and the cotton represented by the receipt is not in existence at the date of its transfer? We have undertaken to show above that the language, "has a right to sell," in case of a sale, implies the warranty that the goods embraced in the warehouse receipt so transferred are in existence and held by the warehouseman at the time

of such transfer. The meaning of this language must necessarily be the same if the transaction amounts to a mere transfer and not a sale, although it is inconceivable that the transfer by the owner of special property in goods for value is not a sale. It has been shown above that the above language imports an implied warranty in case of a sale of a negotiable instrument. It necessarily follows that this language means the same thing in case of a transfer of such negotiable instrument for value.

In view of what is said above, the transferor of a cotton warehouse receipt impliedly warrants that the cotton represented by such receipt is in existence at the time the receipt is transferred; and this is so whether the transaction is a mere sale or a transfer. To allow the holder of such receipt to get the money of a transferee when the latter gets nothing for his money paid in consideration of getting security for the note which he purchases, and for which such receipt is pledged as collateral security, would violate every sense of right and justice. If the cotton represented by such receipt was incapable of delivery because the means of its identification were lacking, it was in effect not in existence; and proof of such fact would authorize a finding that the cotton was not in existence or was not in the custody of the warehouseman.

So the questions propounded by the Court of Appeals should be answered in the affirmative.

*All the Justices concur, except Hill and Gilbert, JJ., who dissent.*

GILBERT, J., dissenting. "Every transferor of a negotiable instrument, whether by indorsement or delivery, warrants (unless otherwise agreed by the parties) that he is the lawful holder and has a right to sell, that the instrument is genuine, and that he has no knowledge of any fact which proves the instrument to be worthless, either by insolvency of the maker, payment, or otherwise." Civil Code (1910), § 4277. There is here no mention of implied warranty as to collateral security attached to negotiable instruments. The Code of Georgia above quoted states explicitly what warranties in such circumstances are implied. Under the facts stated, none other than those enumerated will be implied. Under the Code there was no implied warranty by the Continental Trust Company that the cotton represented by the receipt was in the warehouse at the time the Bank of Harrison purchased the note. At most, the Continental Trust Company warranted that it had

no knowledge that the cotton was not stored as represented by the warehouse company. Counsel for the Bank of Harrison has submitted an able and elaborate brief. The argument, however, is based on the theory that the Continental Trust Company sold not only the note of "The Cotton Warehouse Company," but as well the collateral attached to that note. The question expressly states that the Bank of Harrison bought from the Continental Trust Company "a promissory note for the principal sum of $5000," and it further states that this note was executed by "The Cotton Warehouse Company." The question further states that "attached to the note as collateral security" was another promissory note executed by "The Ellis Cotton Company," and that "attached to the Ellis Cotton Company note, as collateral security to it, was a warehouse receipt of 'The Cotton Warehouse Company.'" This warehouse receipt represented that 32 bales of cotton with described markings had been deposited in the cotton warehouse, and that this cotton was in the actual possession of the cotton warehouse on the day the Bank of Harrison bought the note for $5000. It will be seen that the warehouse receipt was "attached as collateral security" to the Ellis Cotton Company note, and that this latter named note, payable to "The Cotton Warehouse Company," together with the cotton warehouse receipt, was held as *collateral security* by the Continental Trust Company, and that what the Bank of Harrison bought from the Continental Trust Company was the $5000 note of the Cotton Warehouse Company.

Pawns and pledges stand upon the principles of collateral security. Our Code (1910), § 3533, declares: "The pawnee may transfer his debt, and with it the possession of the thing pawned, and the purchaser stands precisely in his situation." In *Bank of Forsyth* v. *Davis,* 113 *Ga.* (supra), at page 342 this court said: "When the pawnee transfers his debt, and delivers to the transferee the property given to secure the debt, the transaction is not a sale of the pledge, but simply places the transferee in the same position which the original creditor occupied." The above facts and the words of the question show that the Bank of Harrison only obtained a special property right in and to the warehouse receipt. Bouvier defines the word "collateral" to mean: "That which is by the side, and not in direct line. That which is addi-

tional to or beyond a thing." Bouvier's Law Dictionary, Rawle's Third Edition, 519. For further definition see 11 C. J. 961, and notes. Had the Cotton Warehouse Company paid their note for $5000 to the Bank of Harrison, obviously neither the Ellis note nor the cotton warehouse receipt would have been subject to the demands of the Bank of Harrison. The Bank of Harrison only in a limited sense held title to them. Whatever title the Bank of Harrison held to the Ellis note and the Cotton Warehouse Company's receipt became null and void upon the event of the payment of the note by the Cotton Warehouse Company. Compare People's State Bank v. Penello, 59 Cal. App. 174 (210 Pac. 432). I am authorized to say that Mr. Justice Hill concurs in this dissent.