## TELL CITY NATIONAL BANK v. WISCHER, TRUSTEE, ET AL.

[No. 13,437. Filed October 30, 1929.]

*Austin B. Corbin* and *Joseph H. Iglehart,* for appellant.
*D. C. Goble* and *Urdix B. Ewing,* for appellees.

NICHOLS, J.—Action by appellant, commenced by filing its verified claim in three paragraphs against the estate of Frank I. Odell and Henry Odell, individually and as partners doing business under the firm name of Sunnycrest Orchard Company, Assigned, for money loaned such insolvents prior to the date on which they made an assignment of all their property for the benefit of their creditors, and seeking to have a certain written assignment and transfer of personal property and two certain warehouse receipts alleged to have been assigned to and held by appellant declared first and prior liens on the proceeds of property covered by said assignment and warehouse receipts remaining in the hands of said trustee, and asking an order of court requiring said trustee to pay the proceeds of said sale so in his hands in payment of the amounts due appellant upon its said assignments and in discharge of its liens so existing upon said fund.

Appellant's claim was allowed by the trustee of the estate, but such allowance was objected to by appellees as labor claimants and, on objection to such allowance, such claim was transferred to the civil trial docket as a separate cause. Appellees, other than the trustee, answered by denial and by a second paragraph, in substance, that they were hired and employed by Frank I. Odell, who was at the time the resident manager of the Sunnycrest Orchard Company, and said company at the time said claimants were so hired was owned by Frank I. and Henry N. Odell, doing business under the firm

name of Sunnycrest Orchard Company, and that said labor was performed at the instance of Frank I. Odell for the Sunnycrest Orchard Company for its benefit, and that the work and labor performed, to wit: picking, harvesting and storing of apples, and other work performed about said company's farm by said laborers and claimants at the Sunnycrest orchards and at other places are valued by said laborers and claimants at amounts set respectively opposite each of the names of the 28 appellees; that said labor performed for said Sunnycrest Orchard Company was performed within a period of six months immediately preceding the assignment by the Odells, individually and as partners as aforesaid; that appellee trustee now holds in his hands $———— as trustee of said estate to be paid to creditors and prior lienholders according to their priority and right; that appellant asks the court to make an order requiring the trustee of said estate, to pay off its liens as shown in its petition, and shows to the court that it advanced money to the Odells, individually and as partners, that said money was advanced to the Odells upon the execution of promissory notes, which were secured respectively by the assignments of property as shown in its petition, which property consisted of ——— bushels of apples held in storage by the Tell City Creamery Company, and that, for the reason that appellant holds said assignments and warehouse receipts, it claims that its liens should have priority over all other liens, including all liens held by appellees as laborers; that appellees' labor was performed immediately preceding, and within the six months preceding, the said assignment for the benefit of creditors, and that appellees are prior lienholders and hold liens that should be paid off before those held by appellant are paid; that appellees, as such lienholders, are entitled under the law to have as much as $50 each paid before any liens held

by appellant are paid; that appellees' claims for labor performed are fair and just, and that no part thereof is for usurious interest; that at the time of said transfer of property, appellant well knew that the Odells were in failing circumstances and that said labor had been performed by said laborers and was not paid for, and that said labor was the picking and harvesting of said apple crop and that said apples were placed in storage in the said Tell City Creamery Company, and well knew, at the time it accepted the transfer of said warehouse receipts, that the labor required to produce said property had never been paid for, and such labor consisted of picking and sorting said apples and in taking care thereof, and general farm work upon said farm.

Appellant's demurrer to the second paragraph of answer was overruled by the court, to which ruling appellant excepted, and elected to stand on said ruling of the court on its demurrer, and thereon the court rendered judgment on the pleadings against appellant, from which this appeal, appellant assigning as error the court's ruling on its demurrer to the second paragraph of answer.

This paragraph of answer was addressed to the whole complaint. It was good as to the first paragraph, which alleged only the assignment of the property without any averment of warehouse receipts or the assignment thereof or the delivery of the property. But the answer must be good as to each of the paragraphs of complaint in order to withstand appellant's demurrer. *Falmouth, etc., Turnpike Co.* v. *Shawhan* (1886), 107 Ind. 47, 5 N. E. 408; *Petty* v. *Trustees of the Church of Christ* (1884), 95 Ind. 278; *McLead* v. *Aetna Life Ins. Co.* (1886), 107 Ind. 394, 8 N. E. 230.

The question which we yet must consider is as to whether the answer is sufficient as to the second and third paragraphs of complaint. It is to be observed

that there is no challenge of the validity of the warehouse receipts set out in these paragraphs, and held to secure the loans to the Odells evidenced by the notes set out therein. The only question then, is as to the priority of claims as between appellant and appellees. Section 9343 Burns 1926 provides, so far as here involved, that, when the property of any firm engaged in agricultural or other business or employment shall be put into the hands of any assignee, then, and in all such cases, the debts owing to laborers or employees shall be treated as preferred debts and shall be first paid in full, and if there be not sufficient to pay them in full, then the same shall be paid to them *pro rata*, after paying costs.

It is under this section of the statute that appellees claim that they have prior liens to that of appellant on the funds in the hands of the assignee growing out of the sale of the apples mentioned in the petition. They justify their claim principally on the authority of *Bell* v. *Hiner* (1896), 16 Ind. App. 184, 44 N. E. 576, and *Small* v. *Hammes* (1901), 156 Ind. 556, 60 N. E. 342, which cases hold that laborers are given a lien on the property of their employer superior to a chattel mortgage or other liens, and appellees well contend that the same principle would apply against warehouse receipts as prior liens as applies against chattel mortgages as such, but, in the Bell case, Justice Reinhard rendered a forceful dissenting opinion, concurred in by Justice Ross, in which he stated that in his view there was no intention from anything that appears in the statute itself that the laborer was to acquire a lien at all except a mere claim on the assets entitling him to preference over general creditors, much less one of such superior character as to reach back and become paramount to all other liens, of whatever nature, that were created before the performance of the labor

constituting the basis of employee's claim. It is to be noted that in the Bell case and in the Small case, the labor performed, and for which a recovery was sought, was performed subsequent to the time of the execution of the mortgages, and it was held in each of those cases that the claims for labor were prior and superior to the liens of the chattel mortgages. It was to this holding in the Bell case, under the circumstances of that case, that Justice Reinhard rendered his dissenting opinion with Justice Ross concurring therein. It seems clear to us that, in harmony with the dissenting opinion of the Bell case, laborers should not be permitted to assert the priority of their claims for labor performed subsequent to the time of the execution of the chattel mortgage, or, as in this case, the delivery of the warehouse receipts, and this was the view afterwards taken in the case of *McDaniel* v. *Osborn* (1905), 166 Ind. 1, 75 N. E. 647, 2 L. R. A. (N. S.) 615, 117 Am. St. 354, where it was held, under §7058 Burns 1901, being the same as §9342 Burns 1926, which involves the same principle as §9343 *supra*, that claims for labor did not give such debts preference over a prior mortgage on such property. The court stated in that case that "the construction contended for by appellants would require the court to infer the lien, and that it attached to this particular property, and superseded a pre-existing chattel mortgage. If such a result is within the meaning and intent of the statute, then, in case of an employer's insolvency, labor claims in amount unlimited, and bounded in time only by the statute of limitations, may be enforced against his estate to the displacement and exclusion of debts of unquestioned validity, secured by mortgage liens of many years standing. We are unable to ascribe such an intent to the legislature, or so to interpret this statute." It is to be kept in mind that in the McDaniel case, as well as in the Bell and Small cases, the labor

claims there involved were for labor performed subsequent to the time of the chattel mortgages which created a lien on the property involved. Under such circumstances, it seems clear to us that the court in the Mc-Daniel case reached a right result, and that subsequent labor claims should not be permitted to supersede prior and existing liens. But, in the instant case, we are confronted with a different situation. It is averred in the second paragraph of answer, to which appellant's demurrer was overruled, that, at the time of the execution and delivery to appellant of the warehouse receipts mentioned in the second and third paragraphs of the petition, appellant well knew that the Odells were in failing circumstances and that the labor performed by appellees had not been paid for, and that it had been performed to produce the very property upon which appellant claims to have warehouse receipts. Indeed, it appears by both the second paragraphs of complaint that, at the time the loans were negotiated and the notes executed to evidence the same, the apples had not yet been picked and stored, and that the loans were made on the agreement that the warehouse receipts would be issued as soon as the apples had been picked and were in storage. Thus, it appears that at the time the loans were made the apples were on the trees and were then no security whatever for the loans, and appellant, of necessity, had to contemplate that labor must be performed by appellees or others in order to make its security for the loans. Under such circumstances, it may be said that the labor was performed for the benefit of appellant and under its authority for the preservation of the apples covered by the warehouse receipts now held by it. With knowledge that the labor must be performed to make its security, and with the knowledge of the statute enacted to protect laborers in the event of an assignment, it would be wholly inequitable to permit appellant to sup-

plant the laborers in the security which the statute has undertaken to give them.

That appellant understood that there were equities in favor of these laborers seems apparent from the fact that, in addition to requiring warehouse receipts for 1,100 bushels of apples to secure a loan of $500, 3,600 bushels to secure a loan of $1,800 and 1,800 bushels to secure a loan of $900, which apples, we infer from an agreement that was made a part of the first paragraph of appellant's claim, were of the value of at least $1 per bushel, it required the personal indorsement as accommodation indorser of W. F. Huthsteiner before it negotiated the loans involved. It would seem that, in the absence of some prior equity, the warehouse receipts for property of double the value of the loan would be ample.

So to construe a warehouse receipt under the facts in the instant case to have precedence over a labor claim for labor theretofore performed, in harvesting and preserving the apples to the benefit of the holder of the receipts, would nullify its force and effect, and afford no protection to the laborer. It would, under circumstances such as here, permit a crafty creditor to stand by and watch the laborers perform the labor which makes the security, and then supplant them in their equities and take from them that which the Legislature clearly intended they should have. This we cannot do. See *Watts, Trustee,* v. *Sweeney* (1891), 127 Ind. 116, 26 N. E. 680, 22 Am. St. 615, as bearing on the principle here involved. Appellant's contention that appellees were but preferred creditors as against the common creditors cannot prevail. The language of the statute that such laborers "shall be first paid in full" is plain and unequivocal, and needs no construction.

The court did not err in overruling appellant's demurrer to the second paragraph of appellees' answer.

Judgment affirmed.

Enloe, J., dissents with opinion in which Neal, J., concurs.

## Dissenting Opinion.

ENLOE, J.—I find myself unable to concur in the conclusion reached, and in the reasoning by which the same was reached, as stated in the principal opinion herein.

In the principal opinion it is said: "It is to be observed that there is no challenge of the validity of the warehouse receipts set out in these paragraphs, and held to secure the loan to the Odells evidenced by the notes therein set out." These receipts being admittedly valid, the prime question now to be considered is as to their legal force and effect. What right did the holder of these receipts have in and to the property therein described?

Warehouse receipts were not negotiable at common law, but have been quite generally made so by statute. These receipts, being admittedly valid contracts of bailment we shall consider their legal effect at common law.

At common law a warehouse receipt was a contract of bailment and its indorsement, by the bailor, and delivery to a third person, carried the title and constructive possession of the thing bailed and therein described, to the holder thereof. *Livingston* v. *Anderson & Son* (1907), 2 Ga. App. 274, 58 S. E. 505; *Montgomery Ward & Co.* v. *Am., etc., Bank* (1897), 71 Ill. App. 20; *Peck* v. *Armstrong* (1862), 38 Barb. (N. Y.) 215; *Shepardson* v. *Cary, Exr.* (1871), 29 Wis. 34; 40 Cyc. 411. The transfer of the warehouse receipt had the same effect as the delivery of the goods themselves and operated to vest in the assignee the assignor's title to the goods, and also his constructive possession. *Allen, etc., Co.* v. *Maury*

& Co. (1880), 66 Ala. 10; *Spangler* v. *Butterfield* (1882), 6 Colo. 356; *Western, etc., R. Co.* v. *Wagner* (1872), 65 Ill. 197.

The indorsing and delivery of a warehouse receipt for goods, as collateral security for a *bona fide* indebtedness, passes to the indorsee all the interest of the bailor in the goods bailed. *Toner* v. *Citizens State Bank* (1900), 25 Ind. App. 29, 56 N. E. 731.

Under these authorities the appellant herein was the holder of the legal title, the owner of the goods described in said receipts, and not merely the holder of a "lien" thereon, which is the theory upon which the principal opinion proceeds. Under the facts of this case, the Odells had an equity to the surplus, if any, after said debt to appellant had been paid, and it was to and upon such surplus, if any, that the said laborers had a *preferred claim* for the said wages earned. But they certainly had no lien thereon. The statute, under which they claim, makes them *preferred creditors* as to assets of the debtor coming into the hands of a receiver, etc., but nowhere declares that such claim shall be a *lien*. But again, if they could be said to have such lien, it could only attach to the *assets* of the debtor coming into the hands of such receiver, and the only item of assets, as against the appellant herein, was the equity in and to said surplus, if any, aforementioned.

In my judgment this cause should be reversed.

Neal, J., concurs in this dissent.