2476. LIGHTSEY, for use, etc., *v.* LEE.

1. Where a bailee refuses, upon demand, to deliver the property bailed or to account for it, a conversion may be implied, and the bailor may sue for a breach of the contract of bailment and recover the market value of the property.

2. The transferee of a warehouse receipt for cotton is entitled to demand the delivery of the cotton upon presentation of the warehouse receipt. Compliance with the stipulations requiring the presentation of a warehouse receipt may be considered to have been waived, when the warehouseman, of whom delivery is sought, denies that the holder of the receipt, seeking delivery, owns any such property, or that it is stored in his warehouse. The refusal to deliver, or the denial of the claimant's right to have the property delivered to him, without any point being

made on the non-production of the warehouse receipt or other written evidence of the deposit, is a waiver of formal presentation thereof.

3. The plaintiff proved his case as laid, and it was error to award a non-suit.

DECIDED FEBRUARY 15, 1911.

Complaint; from city court of Ocilla—Judge Oxford. January 10, 1910.

*J. J. Bull, D. E. Griffin,* for plaintiff.

*H. J. Quincey, A. J. McDonald,* for defendant.

RUSSELL, J. The plaintiff sought to recover the value of two bales of cotton alleged to have been stored in the warehouse of J. M. Lee, the defendant, who was doing business under the name of Irwinville Warehouse Company. It is alleged, that the cotton was placed in the warehouse by Charles Lightsey, and that the warehouse receipts for it were transferred by him to Lister, Lee himself making the indorsement by writing Lightsey's name for him across the back of the receipts; that Lister thus purchased the cotton from Lightsey, and that thereafter Lee held it for safe-keeping and subject to be delivered upon Lister's order; that Lister demanded the cotton, and delivery was refused. Attached to the petition were the two warehouse receipts, which are identical except in the description of the numbers and weights of the bales of cotton received. Each receipt purported to be signed in behalf of the Irwinville Warehouse Company, by J. M. Lee "for the proprietors," and acknowledged the receipt from Charles Lightsey of one bale of cotton, "marks, numbers, etc., as per margin, subject to the presentation of this receipt only, on paying customary expenses and all advances." Upon the trial Lister testified, that he was suing for breach of the contract set out in the receipts; that he bought from Lightsey the cotton designated in them, and Lightsey afterwards brought it to the warehouse; that Lightsey was unable to write, and the defendant indorsed the receipts for Lightsey and gave them to Lister; that he (Lister) afterwards demanded the cotton from Lee, and Lee refused to deliver it, claiming that Lister had no cotton there. He proved the market value of the cotton at the time of the demand. He testified that Lee did not give any reason for not delivering the cotton, but said that he (Lister) had no cotton there. The warehouse receipts were indorsed by Lightsey in blank. On cross-examination Lister testified that among other things that were

said, upon the demand for the delivery of the cotton, he said to the defendant, "It seems that you say that I have not got any cotton over here;" to which the defendant replied, "You haven't;" whereupon Lister said, "You know damned well I have." At the conclusion of the testimony the court awarded a nonsuit.

We think the court erred in awarding a nonsuit. The plaintiff proved his case as laid. The warehouse receipts were negotiable, and they were indorsed by the original bailor in blank. Not only so, but Lightsey, the original bailor, not being able to write, the defendant himself wrote Lightsey's name for him upon the back of the receipts, and delivered them to the plaintiff. These warehouse receipts for cotton were mere symbols of the property itself, and consequently Lightsey's delivery of the receipts to Lister was equivalent to constructive delivery to Lister of the two bales of cotton described in them, and required the warehouseman, upon their presentation and the payment of storage charges and advances, if any, to make actual delivery to whoever might hold them. There can be no question, under the evidence, that Lister was entitled to demand the cotton, and he testified that he turned the receipts over to the Planters Warehouse & Loan Company for that purpose. The order awarding a nonsuit was, no doubt, based upon the idea that the plaintiff failed to demand the property in the manner stipulated in the warehouse receipts. We think the evidence is sufficient upon this point. It is true that by the contract Lister was bound to present the receipts, and to pay any charges or advances that might be due upon the cotton; but Lister testified that he did make demand, and that the demand was refused. He states that he more than once demanded the cotton; and while he does not profess to remember or relate all of the conversation from which we have quoted in the statement of facts, and which, according to Lister, was not the only conversation between them, his testimony clearly indicates that the formal presentation of the receipt and tender of payment of any charges against the cotton was waived by the defendant. Lee asserted unequivocally that he had no cotton there when Lister broached the subject of Lee's refusal to deliver the cotton to the Planters Warehouse & Loan Company, to which, it seems, Lister had turned over the warehouse receipts in April, 1908. The cotton was deposited with Lee in November, 1907. It seems that Lee refused to deliver the cotton to the

Planters Warehouse & Loan Company, and that Lister, after having made other demands, said to him, "It seems that you say that I have not got any cotton over here" (at the Irwinville warehouse). To this Lee replied positively that Lister had no cotton in the warehouse. This was not only a refusal to deliver, but also an admission of a conversion; because if the cotton was placed in the warehouse as evidenced by the receipts, and the bailee could not account for it, this would amount to a conversion on the part of the bailee. The plaintiff did all it was necessary to do preliminary to a presentation of the warehouse receipts; and as the law does not require a vain thing, he was excused from the presentation of the receipts, by the statement of the warehouseman that he had no cotton there. If the warehouseman had required the presentation of his receipt and he had failed to present it and to pay the agreed or customary charges, then the warehouseman could have refused to deliver the cotton; but when the warehouseman told him he had no cotton there, thus not only refusing delivery of the cotton, but also denying his right to make a demand, no further necessity for the presentation of the receipt or for an offer to pay charges remained. The necessity for presenting the receipt was obviated by the statement that the plaintiff had no cotton there; because if he had no cotton there, the presentation of the receipt would have been a mere formality; and certainly, so far as the charges are concerned, the plaintiff would not have been required to pay charges in consideration of the warehouseman's having allowed his cotton to be lost or converted. It may be that the defendant has a good defense and can disprove the case made; but the evidence in behalf of the plaintiff, in the absence of testimony to the contrary, would authorize the recovery of the market value of the two bales of cotton described in the receipts. For this reason we think the court erred in awarding a nonsuit.          *Judgment reversed.*