*Emmett Smith,* for plaintiff in error.

*Willis Smith, solicitor,* contra.

---

#### 11722.　MITCHELL *et al. v.* MARTEL MANUFACTURING COMPANY.

Whether there was a conversion of the plaintiffs' cotton, delivered to the defendant to be ginned, was a question for the jury, under the evidence in this case, and the court erred in granting a nonsuit.

DECIDED MAY 12, 1921. REHEARING DENIED JUNE 14, 1921.

Trover; from city court of Atlanta — Judge Reid. May 19, 1920.

*Tillou Von Nunes,* for plaintiffs.

*Smith, Hammond & Smith,* for defendant.

BLOODWORTH, J. The plaintiffs delivered to the defendant company cotton in the seed, for the purpose of having it ginned. After the cotton was ginned and the bale of lint cotton was rolled from the press to the platform, one of the plaintiffs went to find a buyer for the cotton, and when he returned the bale was gone. The plaintiffs brought this suit, an action of trover, and on the trial showed delivery to the defendant, title in themselves, the

value of the cotton, and that the defendant refused on demand to deliver to them the cotton or to pay them for it. After hearing the evidence of the plaintiffs the trial court granted a nonsuit. Under the facts of this case we think this was error. The court should have submitted to the jury the question as to a conversion. Raymond Bailey, one of the plaintiffs, testified: "I was standing out there on the platform when this bale comes out, and the packer told me it weighed 462. After it was weighed I went down to the ginner for him to give me a tag to go on this bale of cotton, with my initials, and he didn't have no tags that day. That was the last bale of cotton that was ginned that day. The ginner's name was Mr. Owens, and he says, 'You going to sell it?' I told him 'Yes, sir.' He said 'Well, your bale of cotton will be all right. You go and get Mr. Martin [the defendant's agent] and come on down here, and you leave it.' He says, 'I will see after it here, I ain't going anywhere.' I left the bale on the scales and went up to see Mr. Martin. . . Me and Mr. Martin goes down to the warehouse by the gin-house and I says to him, 'They have done trucked my cotton in from the platform,' and he says, 'Why, they ought not to have moved it.' 'Well,' I says, 'my cotton is gone,' and we goes into the warehouse and tries to find it, and Mr. Martin told me to come back Monday morning." The witness testified that when he returned with Mr. Martin he found that his cotton had been trucked in, that the truckers who were working for the defendant were the only persons on the platform when he left, and he added: "They had all gone when I got back, and I ain't never seen that cotton no more. I made a demand on Mr. Martin to pay me for that cotton." Charles Mitchell, the other plaintiff, swore that while Raymond was gone for Mr. Martin he saw all the cotton on the platform trucked in the warehouse; that when Mr. Martin came back with Raymond he went in the warehouse, and when they could not locate the bale of cotton Mr. Martin said: "Boys, you all will have to wait until Monday. Come back Monday and I will buy your cotton. It is all right, and it is insured, and if it gets burned up or anything, you will get paid for your cotton." He swore that he returned Monday and again Tuesday, but never got his cotton. He also swore: "When you sell them your seed they always take the price of the ginning out of the seed, and you can carry your bale away right away, or

if you want to you can sell it. If you don't want to sell it or take
it away, you can store it there in the warehouse, and they will
give you a check for it." J. O. Owens swore that he was the gin-
ner for the defendant, that the cotton of the plaintiffs was the last
bale ginned that day, that when it was ginned "there were quite
a few wagons on the yard," that the last time he saw the bale of
cotton of plaintiffs it was on the platform, that the gin usually
stopped at 11 o'clock on Saturday, that when he left that day there
was no cotton on the platform, and that Bailey's wagon was on
the scales.

The case of *Legere* v. *Blakely Gin Co.*, 11 *Ga. App.* 325 (75 S.
E. 163), is similar in many respects to this one, and we think the
principle announced therein controls this case. In that case Chief
Judge Hill said: " The undisputed evidence showed title to the
bale of cotton in the plaintiff, and that its value was $35.75, and
the plaintiff testified that he delivered this bale of cotton to the
defendant, for the purpose of having it ginned; that after doing
so and before this suit was filed, he demanded its return, and the
defendant refused to deliver it to him. There was conflict in the
evidence as to whether the cotton should be returned to the plain-
tiff when ginned and baled, or whether, when ginned and baled,
the defendant fully performed the purpose of the bailment when it
placed the cotton on the platform. The evidence also showed that
the bailee not only refused, on demand, to deliver the cotton to
the plaintiff, but refused to account for it to him. Under these
facts we think a conversion by the defendant could be implied,
and the bailor had the right to sue in trover on the contract of
bailment and recover the market value of the property. *Lightsey*
v. *Lee*, 8 *Ga. App.* 762 (70 S. E. 179); *Wilson Coal & Lumber
Co.* v. *Hall & Brown Woodworking Machine Co.*, 97 *Ga.* 330 (22
S. E. 530). In short, the plaintiff proved title, value, conversion,
and demand and refusal before the suit was instituted. This
was sufficient to make out his right to recover, in the absence of
any defense. *Pryor* v. *Brady*, 115 *Ga.* 850 (42 S. E. 223). The
defendant conceded all the elements of a trover suit except the
fact of conversion; and, as stated, we think that a conversion could
be implied, under the facts sworn to by the plaintiff. The action
of trover is founded upon a concurrent right of property and
possession, and any act of the defendant which negatives or is in-

consistent with this right amounts in law to a conversion. *Roper Wholesale Grocery Co.* v. *Faver,* 8 *Ga. App.* 178 (68 S. E. 883). Certainly the law would cast upon the bailee the duty of exercising due care and diligence in keeping and protecting the property intrusted to him by the bailor, and there was evidence from which the jury could well have inferred that this duty of diligence had not been fully performed by the gin company in reference to the bale of cotton." "In an action for damages for a conversion of personalty proof of title to the property in the plaintiff, possession in the defendant, a demand for possession, and a refusal by the defendant to surrender the property to the plaintiff, prior to the filing of the suit, makes a prima facie case for recovery, although it does not appear that the defendant was in possession at the time the suit was filed." *Chambless* v. *Livingston,* 123 *Ga.* 257 (2) (51 S. E. 314).

    *Judgment reversed. Broyles, C. J., and Luke, J., concur.*